ELIZABETH TIERNAN, APPELLANT, V. CHRISTOPHER TIERNAN, APPELLEE.

FILED JANUARY 26, 1922.   No. 21985.

Husband and Wife: ANTENUPTIAL AGREEMENT.   Parties contemplating marriage entered into an agreement, whereby their property rights after marriage were settled or attempted to be settled. Among other things, the agreement provided: "In consideration

of said marriage and covenants herein, the party of the first part gives to the party of the second part during her natural life, provided in event she survives the party of the first part, so long as she shall remain single and the widow of the party of the first part, the following described real estate." *Held*, that the true intent of the parties in making such agreement was that the woman should have maintenance during her life, and that such provision of the agreement gave her the right to possession of the real estate and the rents and profits arising therefrom, in the event she survived the man; such arrangement commencing at the time of his death and continuing as long as she lived as his widow.

APPEAL from the district court for Lancaster county: WILLIAM M. MORNING, JUDGE. *Affirmed.*

*H. R. Ankeny* and *Cosgrave & Campbell*, for appellant.

*Doyle, Halligan & Doyle,* contra.

Heard before LETTON, DAY and DEAN, JJ., CLEMENTS (E. P.) and DILWORTH, District Judges.

DILWORTH, District Judge.

Appellant and appellee were married in 1915. Appellee was a man well along in years, while the appellant was middle-aged. He was quite wealthy and she was in very moderate circumstances. Before the marriage took place they entered into an agreement, wherein they settled their property rights when married. This agreement reads as follows:

"This agreement made this 9th day of April, A. D. 1915, by and between Christopher Tiernan of Lincoln, Nebraska, party of the first part, and Elizabeth Schulte of Lincoln, Nebraska, party of the second part, witnesseth:

"Said parties are engaged to be married and anticipate becoming husband and wife in the near future. Each of said parties is the owner of real estate and personal property. The party of the first part is the father of living children by former marriage.

"Now, therefore, in consideration of said con-

templated matrimony between said parties, and the payment of the sum of one dollar by each of said parties to the other, it is mutually convenanted and agreed by and between said parties; neither of said parties shall ever become liable for any debt contracted by the other party.

"Each of said parties hereby quitclaims, renounces and relinquishes all claim of interest, and all interest in the property, real, personal, or mixed, of the other, both as to the property in possession and that which may hereafter be acquired by either of said parties, and quitclaims, conveys and renounces all interest in the rents or profits of the property of the other, and will forever refrain from interference in the management of said property, and the collection of rents and profits thereof. The intention being to leave the separate property of each of the parties to this contract free from acquiring any interest therein by the other party, by reason of said marriage.

"Each party hereto shall sell and convey any real estate owned by him or her without the other joining in the conveyance.

"Each of said parties hereby releases, relinquishes, and conveys all right of inheritance of every nature and description in the property of the other, whether homestead, child's share, dower, courtesy, widow's settlement, and every other right which may or would result or be acquired by said marriage, but for this contract. The said parties each renounce the right to administer the estate of the other.

"In consideration of said marriage and covenants herein, the party of the first part gives to the party of the second part during her natural life, provided in event she survives the party of the first part, so long as she shall remain single and the widow of the party of the first part, the following described real estate, to wit: East one-half of lot nine (9) in block sixty-three (63) in Little's Addition to the city of Lincoln, Nebraska. At the death of the party of the second part, or in case she

survives party of the first part, and marries, said grant to her shall *ipso facto* terminate, and C. W. Tiernan, owner of the fee, subject to above grant shall instantly take full possession of said property.

"The said Elizabeth Schulte, party of the second part, in consideration of the above property for her, the covenants and agreements herein, does hereby release, convey, and quitclaim to said Christopher Tiernan, all interest I may acquire by virtue of said marriage in and to all his property, both real, personal, and mixed, now in his possession or that he may hereafter acquire, renouncing forever all claim in law or equity, all right of homestead, survivorship, all estate of inheritance, dower, child's part, widow's allowance, all rights which may be created by any future change in the law of inheritance, all rights under the present law of inheritance, whether in the state of Nebraska or elsewhere.

"Should said betrothal, when consummated in marriage, for any reason prove infelicitous, and a separation take place, which God forbid, the foregoing renunciation of all claim to the property of said Christopher Tiernan, shall likewise apply to such condition, and I here now renounce all right to alimony, maintenance, or separate support, and further forever renounce all right to any interest of any nature or description in or to the property of said Christopher Tiernan, under any and all vicissitudes which can or may arise.

"No possible future condition, whether foreseen or anticipated or not, shall ever be deemed an exception or waiver to this my renunciation of all and every right in or to any part of the property of said Christopher Tiernan, with which said marriage to 'him would or might clothe me, but for this agreement. I shall not inherit any property or money from him. No allowance shall be made from his estate to me.

"My right to administer his estate is renounced. These covenants are irrevocable."

The marriage was consummated, but ended unfort-

unately. Where the fault lies we are unable to say, for that part of the case is not before us.

After many disputes, and some litigation, between the parties, appellant commenced this action. She sets out three causes of action in her petition. The first asks for separate maintenance and support because of cruelty, abandonment and nonsupport on the part of appellee. The second cause of action sets out that paragraph of the agreement which reads: "In consideration of said marriage and covenants herein, the party of the first part gives to the party of the second part during her natural life, provided in event she survives the party of the first part, so long as she shall remain single and the widow of the party of the first part," and asserts that the same gave her a life interest in the property mentioned therein, commencing at the date of their marriage. The third cause of action is for an accounting of the rents and profits for said premises from the date of the marriage, and prays for judgment therefor in the sum of $15,000.

Appellee filed an answer, admitting the marriage of the parties, and denying all claims as to acts of cruelty, abandonment and failure to support, as set out in appellant's first cause of action; and pleads *res judicata* as to the second and third causes of action; also, that said contract or agreement herein referred to "was made for the purpose, in the event of the death of this defendant, of providing the income from said property for the plaintiff during the remainder of her life, or until she remarried, and not otherwise, and was so thoroughly understood and considered by the plaintiff and defendant." Further answering, the appellee states that appellant was guilty of extreme cruelty toward him, instances of which are cited, and that she had abandoned him. Appellee prays that the action be dismissed as to appellant's cause of action, and that he be granted an absolute divorce from her.

Appellant filed a reply, denying every allegation of the

answer, except that relating to the marriage, and of the entering into of the agreement set forth in the petition; and alleging that the construction of the agreement, as alleged by the answer to have been understood and considered by the parties, is without force and effect, for the reason that said provision is void and against public policy and in violation of the marriage contract, contravenes the purposes and objects of the marriage, and tends to induce a separation and divorce of the parties.

Trial was had and decree rendered in favor of appellant, granting her separate maintenance, and $125 a month alimony from May 1, 1920. Judgment was entered against appellee for $1,150, amount of the alimony unpaid to March 1, 1921. Such monthly payments were to continue during the joint lives of the parties. It was also decreed that the title to the east half of lot 9, of block 63, Little's addition to Lincoln, be confirmed and quieted in plaintiff for such period as she remains unmarried after the death of defendant, and that she recover the possession, rents and profits from the same after the date of the death of said defendant, and for so long a period as she remains unmarried; that she take nothing by her action for accounting; dismisses appellee's cross-petition for absolute divorce; and allows appellant $400 attorney's fees.

Appellant appeals from that part of the decree relating to the construction of the contract and accounting, but not from that part granting separate maintenance and alimony, and brings the case to this court upon the record alone, no bill of exceptions having been prepared or settled.

Appellee insists very strongly that the appeal in this instance should be dismissed, for the reason that full consideration cannot be given the subject matter without the evidence being before the court. There is considerable force in this position, and if we had not come to a conclusion affirming the decree of the trial court on its

merits, we would have given the objection raised by appellee more consideration.

The trial court gave proper construction to that part of the antenuptial agreement under consideration, reading as follows: "In consideration of such marriage and convenants herein, the party of the first part gives to the party of the second part during her natural life, provided in the event she survives the party of the first part, and so long as she shall remain single and the widow of the party of the first part."

Section 6195, Rev. St. 1913, provides that in every conveyance the true intention of the parties shall be carried out. In construing this agreement it devolves upon us to ascertain the intention of the parties in entering into it. To do this properly the conditions and circumstances surrounding the transaction should be considered. Appellee was a man possessed of considerable property, and was 78 years of age. Appellant had no means of her own to speak of; it being intimated in the argument, and not disputed, that at the time of this agreement she was doing menial work in order to support herself. On the one hand, we have an old man who needed care and attention and the comforts of a home; on the other, we find a woman who had no home and no means of support other than that derived from her daily work. They entered into this agreement, and it is evident from the face of the agreement, when considered with the conditions surrounding the parties, that the object and purpose of this paragraph under consideration was that appellant should be provided with maintenance during her entire life. Under this agreement she had a home with appellant as long as they remained husband and wife. During such time it was his duty to provide such a home for her and maintenance. At his death this contract steps in and takes the place of his obligation as a husband, and makes provision for the maintenance of appellant so long as she remains single. In the event of her remarriage, the duty of providing her with a home

and maintenance would fall upon the man she married. This agreement was legal in every way, and, as construed by the court, was one of great benefit to appellant. It provided maintenance for her as long as she lived.

The trial court properly construed this agreement, and the decree entered by it should be sustained. We find no error on the part of the trial court in the disposition of this case, and its action is therefore

AFFIRMED.