NELLIE FRANK BENTON v. GERMAN-AMERICAN NA-
TIONAL BANK OF KANSAS CITY, MISSOURI.

FILED SEPTEMBER 19, 1895. No. 5754.

1. **Negotiable Instruments**: CONTRACTS OF INDORSEMENT: LI-
ABILITY OF MARRIED WOMEN: CONFLICT OF LAW: LEX LOCI.
A married woman and her husband were citizens and residents
of the state of Missouri. The wife there indorsed, as an accom-
modation merely, the promissory note of the husband payable
to a bank in that state. The statutes of Missouri in force at the
date of the execution of said contract of indorsement provided:.
"A married woman shall be deemed a *femme-sole* so far as to en-
able her to carry on and transact business on her own account,
to contract and be contracted with, to sue and be sued, and to
enforce and have enforced against her property 'such judgments
as may be rendered for or against her, and may sue and be sued
at law or in equity with or without her husband being joined as
a party." (Revised Statutes, Mo., sec. 6864, ch. 109.) In a suit
at law in this state against the wife on her contract of indorse-
ment, *held*, (1) that the contract of indorsement should be con-
strued and governed and the married woman's liability thereon
determined by the laws in force in the state of Missouri at the
date of the execution of the contract of indorsement, and not by
the laws of the state of Nebraska.

2. ———: ———: ———: EVIDENCE. That the evidence established
that the contract of indorsement in the state where made was
neither void nor voidable by the married woman because of her
coverture, and was as valid and binding upon her as though she
had been a man.

3. ———: ———: ———. The contract having been made by a
married woman, a citizen of another state, and being a valid and
binding contract under the laws of that state, the fact that it
was not made with reference to or upon the faith and credit of
her separate estate or business afforded no sufficient reason why
the contract should not be enforced by the courts of this state.

4. ———: EXTENSION OF TIME FOR PAYMENT: PLEDGES. Evi-
dence that notes deposited as collateral security for the payment
of other notes were from time to time renewed, interest collected
thereon in advance, and the time of payment extended will not
of itself support a finding that the holder of such original notes
thereby extended their time of payment.

ERROR from the district court of Douglas county. Tried below before DAVIS, J.

The facts are stated by the commissioner.

*A. S. Churchill,* for plaintiff in error:

The transaction should be governed by the law of Nebraska. Plaintiff in error is not liable, for the reason she did not contract with reference to her separate estate. (*Gillespie v. Smith,* 20 Neb., 455; *Barnum v. Young,* 10 Neb., 309; *State Savings Bank of St. Joseph v. Scott,* 10 Neb., 84; *Davis v. First Nat. Bank,* 5 Neb., 242; *Hale v. Christy,* 8 Neb., 264; Wharton, Conflict of Laws [2d ed.], sec. 273; *Boyce v. Grundy,* 9 Pet. [U. S.], 289; *Norris v. Chambres,* 29 Beav. [Eng.], 246; *Kerr v. Moon,* 9 Wheat. [U. S.], 565; *United States v. Crosby,* 7 Cranch [U. S.], 115; *McGoon v. Scales,* 9 Wall. [U. S.], 23; *Loving v. Pairo,* 10 Ia., 282; *Doyle v. McGuire,* 38 Ia., 410; *Frierson v. Williams,* 57 Miss., 451; *Shacklett v. Polk,* 51 Tenn., 104; *Odell v. Rogers,* 44 Wis., 138; *Chapman v. Robertson,* 6 Paige [N. Y.], 627; *Sell v. Miller,* 11 O. St., 331; *United States v. Fox,* 94 U. S., 315; *Brine v. Hartford Fire Ins. Co.,* 96 U. S., 627.)

Plaintiff in error is released, because the time of payment was extended for a valuable consideration without her consent. It was error to direct a verdict for plaintiff below. (*Atchison & N. R. Co. v. Bailey,* 11 Neb., 332; *Smith v. Sioux City & P. R. Co.,* 15 Neb., 583; *Johnson v. Missouri P. R. Co.,* 18 Neb., 690; *Blake v. White,* 1 Young & C. [Eng.], 420; *Walters v. Swallow,* 6 Whart. [Pa.], 446; *Scott v. Saffold,* 37 Ga., 384.)

*James W. Carr,* also for plaintiff in error.

*Isaac E. Congdon* and *Haff & Van Valkenburg, contra:*

Plaintiff in error became liable to the defendant in error

by her indorsement of the notes. She has been sued in the proper form under the laws of Nebraska. The courts of Nebraska should enforce her liability which accrued and became fixed in Missouri. (*Thurston v. Rosenfield*, 42 Mo., 474; Story, Conflict of Laws, sec. 241; Wharton, Conflict of Laws, secs. 96, 101, 119, 401, 419; *Meyers v. Van Wagoner*, 56 Mo., 115; Revised Statutes, Mo., sec. 6864, ch. 109; *Osborne v. Doherty*, 38 Minn., 430; *Lomersan v. Johnston*, 44 N. J. Eq., 93; *Bowery Nat. Bank v. Snffin*, 7 N. Y. Sup., 520; *Sypert v. Harrison*, 88 Ky., 461; *Robinson v. Queen*, 87 Tenn., 445; *Bell v. Packard*, 69 Me., 105; *Binney v. Globe Nat. Bank*, 150 Mass., 574; *Milliken v. Pratt*, 125 Mass., 374; *Bank of Louisiana v. Williams*, 46 Miss., 618; *Thompson v. Ketcham*, 8 Johns. [N. Y.], 189; *Delahaye v. Heitkemper*, 16 Neb., 475; *Joslin v. Miller*, 14 Neb., 93; *Olmstead v. New England Mortgage Security Co.*, 11 Neb., 487.)

Ragan, C.

The German-American National Bank of Kansas City, Missouri, (hereinafter called "the bank,") brought this suit in the district court of Douglas county against Mrs. Nellie Frank Benton on her indorsement of certain promissory notes previously made by certain parties and delivered to the bank. The notes and Mrs. Benton's contract of indorsement were executed and delivered in the state of Missouri, the notes were payable there, and Mrs. Benton was at the time a married woman and a citizen and resident of said state. The jury, in obedience to an instruction of the district court, returned a verdict in favor of the bank and against Mrs. Benton for the amount due upon the notes. To reverse the judgment pronounced against her upon this verdict Mrs. Benton has prosecuted to this court proceedings in error.

1. One of the defenses to the action interposed by Mrs. Benton in the court below was that the bank, without her

knowledge or consent, had granted to the makers of the notes indorsed by her an extension of time of payment; and it is now insisted that the court erred in instructing the jury to return a verdict in favor of the bank because there was sufficient evidence introduced at the trial to support a finding of the jury that such extension of time for the payment of the notes had been given by the bank to the makers thereof as pleaded by Mrs. Benton.  The evidence, and all the evidence, is in substance that some time after the notes indorsed by Mrs. Benton had matured that some of the makers or indorsers of said notes deposited with the bank as collateral and additional security for said notes certain other notes.  These collateral notes were from time to time by the bank renewed, their time of payment extended, and interest collected thereon in advance; but these facts did not constitute a contract of extension of time of payment of the notes indorsed by Mrs. Benton. The district court then did not err in directing the jury to find a verdict against Mrs. Benton in so far as this defense is concerned.

2. At the trial, counsel for Mrs. Benton requested the district court to instruct the jury as follows: "You are instructed that the defendant being a married woman at the time she signed the notes in question, she will not be liable for the payment thereof unless it was given with reference to and on the faith and credit of her separate property and estate."  The refusal of the district court to give this instruction is now assigned as error.  The argument is that the pleadings and evidence conclusively establish that Mrs. Benton at the time she executed the contract of indorsement on which she is sued was a married woman, and that such contract of indorsement was not made by her with reference to or upon the faith and credit of her separate estate or business, and that therefore the contract is voidable by her at her election.  We assume that counsel is correct in his contention as to what the pleadings

and evidence establish, and for the purposes of this case only we assume that had the contract of indorsement been made by Mrs. Benton in this state, she being then and there a citizen and resident of this state and a married woman, such contract would have been voidable at her election, unless it appeared that such contract was made by her with reference to and upon the faith and credit of her separate property or business; but the contract made by Mrs. Benton was made in the state of Missouri. Mrs. Benton was a citizen of that state at the time, and the contract was to be performed in that state. Clearly, then, such a contract as this is to be construed and governed by the laws of the state where made, and not by the laws of the state of Nebraska. In *Robinson v. Queen*, 87 Tenn., 445, a married woman, domiciled in the state of Kentucky, signed a note there as surety for her husband. She was afterwards sued on this note in the state of Tennessee. She pleaded her coverture as a defense to the action, and the question arose whether her contract was to be construed and her liability thereon determined by the laws of Tennessee or Kentucky, and the supreme court of the state of Tennessee said: "The first question to be disposed of in this cause is whether a married woman, domiciled in the state of Kentucky, is liable in the courts of this state upon a note made by a firm of which her husband was a member, and executed by her as surety for such firm, where under the laws of Kentucky she had, before the execution of the note, been emancipated from all the disabilities of coverture, and clothed with all the powers of a *femme-sole*, so far as the right to contract and to sue and be sued was concerned. This inquiry we answer in the affirmative. Though some authorities may be found to the contrary, it may now be said to be well-settled law that the validity of a contract, the obligation thereof, and capacity of the parties thereto is to be determined by the *lex loci contractus*,    *    *    * unless there be something in the contract which is deemed

hurtful to the good morals, or injurious to the rights, of its own citizens by the laws of the state or country whose courts are called upon to enforce the contract made in a foreign state or country. The notes involved in this suit were made in Kentucky, payable there, the makers and payees resident there, and, as we have already stated, were valid there, and binding and enforceable against the married woman as fully as if she were a *femme-sole.*" We think this is a correct statement of the law, and that the contract of indorsement made by Mrs. Benton is to be construed and governed and her liability thereon determined by the laws in force in the state of Missouri at the date of the execution of the contract of indorsement. On the trial of this action there was introduced in evidence the statutes of the state of Missouri on the subject of the power of married women to enter into contracts and their liability for contracts made by them. So much of the said statutes as is material here is as follows: "A married woman shall be deemed a *femme-sole* so far as to enable her to carry on and transact business on her own account, to contract and be contracted with, to sue and be sued, and to enforce and have enforced against her property such judgments as may be rendered for or against her, and may sue and be sued at law or in equity with or without her husband being joined as a party." (Revised Statutes, Mo., sec. 6864, ch. 109.) Here then is evidence that under the laws of Missouri the contract of indorsement made there by Mrs. Benton was neither void nor voidable because of her coverture, but was as valid and binding upon her as though she had been a man; and since the contract of Mrs. Benton was valid and binding in the state where made, the record contains no suggestion of a reason why it should not be enforced by the courts of this state, even though it was not made with reference to or upon the faith and credit of her separate estate or business. We conclude, then, that the learned district judge was right in refusing to give the instruction.

There are some other points argued by counsel for Mrs. Benton in his brief, but it would subserve no useful purpose to examine them, as the judgment of the district court is the only one that could have been correctly rendered under the evidence in the case and the law applicable thereto. The judgment of the district court is

AFFIRMED.