RUTHIE BROWN ET AL., APPELLEES, V. SAM
WESTERFIELD ET AL., APPELLANTS.

FILED MARCH 4, 1896.'  No. 6136.

1. **Quieting Title:** DELIVERY OF DEED: PLEADING. An alle-
gation in a pleading that the grantor "made and exe-
cuted" a deed, includes all acts essential to the comple-
tion of the muniment of title,—the delivery of the
instrument to the grantee as well as the signature of
the grantor.

2. **Lost Deeds:** TITLE. The loss or destruction of a deed,
after delivery thereof, does not divest the title of the
grantee.

3. **Deeds:** DELIVERY. The delivery of a deed is essential to
render the conveyance operative.

4. ——: ——: EVIDENCE. Delivery is purely a question
of intent to be determined by the facts and circum-
stances of each particular case.

5. ——: ——. It is not essential to the validity of a deed
that it should be delivered to the grantee personally. It
is sufficient, if the grantor delivers it to a third person
unconditionally for the use of the grantee, the grantor
reserving no control over the instrument.

6. ——: ——. A mother signed and acknowledged a deed
before a justice of the peace, conveying to her minor
daughter certain real estate, and delivered the deed to
the justice for the use and benefit of the grantee, with-
out any reservation of control, with the intention and
understanding that the justice should retain the custody
of the instrument until the grantor's death, when he
was to file it for record. The mother subsequently told
the daughter that the property belonged to the latter,
and that it had been fixed so she would have a home.
*Held,* That the delivery to the justice was sufficient to
pass the title to the property to the grantee at the date
of such delivery.

APPEAL from the district court of Lancaster
county.  Heard below before TUTTLE, J.

See opinion for statement of the case.

*Pound & Burr,* for appellants:

The petition merely alleges that the deed was made and executed, without any allegation of delivery. The proof also fails to show delivery of the deed. The plaintiff has no title to the lot except as one of the heirs of Hannah Brown. (*Patrick v. McCormick,* 10 Neb., 1; *Wier v. Batdorf,* 24 Neb., 83; *Jones v. Loveless,* 99 Ind., 317; *Miller v. Physick,* 24 Ark., 244; *Miller v. Lullman,* 81 Mo., 311; *Byars v. Spencer,* 101 Ill., 429.)

A deed intended to operate as a testamentary disposition is in effect a will and is ambulatory and revokable during the life of the grantor. (*Turner v. Scott,* 51 Pa. St., 126; *Hall v. Bragg,* 28 Ga., 330; *Carey v. Dennis,* 13 Md., 1; *Frederick's Appeal,* 52 Pa. St., 338.)

Where a will once known to exist and to have been in the custody of the testator cannot be found after his decease, the legal presumption is that it was destroyed by the testator with the intention of revoking it. (*Behrens v. Behrens,* 47 O. St., 323; *Minor v. Guthrie,* 4 S. W. Rep. [Ky.], 179.)

*Roscoe Pound* and *Burr & Burr,* also for appellants:

To constitute delivery the grantor must unequivocally indicate it to be his intention that the instrument shall take effect as a conveyance of the property. It must be shown to have been intended as a present, operative conveyance. (*Fisher v. Hall,* 41 N. Y., 416; *Barrows v. Barrows,* 138 Ill., 649; *Davis v. Ellis,* 39 W. Va., 226; *Cline v. Jones,* 111 Ill., 563; *Schuffert v. Grote,* 88 Mich., 650; *Taft v. Taft,* 59 Mich., 185.)

Possession of the deed by the person employed to draw it is no delivery. (*Healy v. Seward,* 5 Wash., 319.)

*B. F. Johnson* and *T. F. Barnes, contra.*

References to the question of intention as to delivery and how determined: *Jordan v. Davis,* 108 Ill., 336; *Warren v. Swett,* 31 N. H., 332; *Burkholder v. Casad,* 47 Ind., 418; *Stevens v. Hatch,* 6 Minn., 19; *Black v. Kuhlman,* 33 O. St., 203; *Mitchell v. Ryan,* 3 O. St., 377; *Jamison v. Craven,* 4 Del. Ch., 311; *Adams v. Ryan,* 61 Ia., 733.

References as to delivery to another to hold for grantee's use: *Eckman v. Eckman,* 55 Pa. St., 269; *Jones v. Swayze,* 42 N. J. Law, 279; *Fewell v. Keisler,* 30 Ind., 195.

Absolute delivery to a third person to hold until grantee's death is a good delivery and passes title presently. (*Hinson v. Bailey,* 73 Ia., 544; *Albright v. Albright,* 70 Wis., 528.)

Acceptation is presumed in favor of infants. (*Byington v. Moore,* 62 Ia., 470; *Palmer v. Palmer,* 62 Ia., 204.)

A deed once delivered cannot be revoked by redelivery. (*Bunz v. Cornelius,* 19 Neb., 107; *Rogers v. Rogers,* 53 Wis., 36.)

NORVAL, J.

This was a suit by Ruthie Brown against Sam Westerfield and Ida Westerfield, his wife, and Louis and Jimmie Brown, to quiet the title in plaintiff to the south half of lot C, a subdivision of lots 4, 5, and 6, in block 28, of Kinney's O Street Addition to the city of Lincoln. The petition alleges that plaintiff is the only living child of Hannah and James Brown; that on the 20th day of June, 1883, the said Hannah Brown, now deceased, being the owner in fee-simple of the real estate above described, together with her hus-

30

band, said James Brown, made and executed a
warranty deed to the plaintiff of said property,
reserving a life estate therein to said James.
Brown; that said deed has become lost or
stolen,—plaintiff is unable to state which,—but is.
informed that the same was placed in the hands.
of Sam Westerfield, one of the defendants; that
though demand for the same has been made upon
him, he has refused to comply therewith, and dis-
claims all knowledge of the deed; and that the
defendants Sam Westerfield, Jimmie and Louis.
Brown are not the issue of the said James and
Hannah Brown, but are children of said Hannah
Brown by a former husband. James Brown,
plaintiff's father, was subsequent to the institu-
tion of the suit joined as party plaintiff, and no
service of summons having been had upon Louis.
and Jimmie Brown, the action was dismissed as to
them. Sam Westerfield answered, admitting that
plaintiff is the child and one of the heirs at law of
said Hannah Brown, and denying all other aver-
ments of the petition. By way of cross-petition,
Westerfield sets up that Hannah Brown and her
husband, James Brown, executed and delivered a
mortgage upon said lot C to one Mary Jane Car-
man to secure the payment of $27 and interest;
that the defendant is the owner of said mortgage,
and that the debt for which the same was given to
secure has not been paid, nor any part thereof.
The answer prays for the dismissal of plaintiff's.
suit, and for foreclosure of said mortgage. Upon
the hearing, a decree was entered quieting the
title to the premises in controversy in Ruthie
Brown, subject to the life interest therein of her
father, and foreclosing said mortgage. From the
decree quieting the title the Westerfields appeal.

The appellants contend, in argument, that the petition is defective and fails to state a cause of action, in that it contains no specific allegation that the deed in question was ever delivered. The delivery of a deed is indispensable to its validity. While it is true there is no direct averment in the pleading that the deed had been delivered, yet this is not fatal. It is averred that the grantors "made and executed a warranty deed to the plaintiff" to the property. "Execute" is defined by Webster thus: "To complete, as a legal instrument; to perform what is required to give validity to, as by signing and perhaps sealing and delivering; as, to execute a deed, lease, mortgage, will," etc.; and the same authority gives the following as one of the definitions of the word "execution:" "The act of signing, sealing, and delivering a legal instrument, or giving it the forms required to render it valid; as the execution of a deed." In 1 Warvelle, Vendors, p. 482, it is said: "The term 'execution' primarily means the accomplishment of a thing—the completion of an act or instrument; and in this sense it is used in conveyancing to denote the final consummation of a contract of sale. The term properly includes only those acts which are necessary to the full completion of an instrument, which are: the signature of the disposing party, the affixing of his seal to give character to the instrument, and its delivery to the grantee." In this state the seal of the grantor is unnecessary, and an acknowledgment is no part of the deed conveying land other than the grantor's homestead, but an unacknowledged deed to such real estate, otherwise perfect, as between the parties, passes the title. The averment in the petition that the grantors "made and executed"

the deed, under the definitions already given, includes the delivery of the instrument as a conveyance of the property.

The uncontradicted testimony shows that James and Hannah Brown signed and acknowledged a deed of conveyance to their daughter, Ruthie Brown, one of the plaintiffs herein, for the premises in controversy, reserving a life estate therein to James Brown, one of the grantors. It was never actually delivered to the grantee in person, nor was it ever placed upon record. The instrument is not now to be found. A deed is merely the evidence of the grantee's title. The loss or destruction of the deed did not divest plaintiffs of their title, if they ever acquired one. And whether the title ever passed from Mrs. Brown, the owner of the fee to this property, depends upon whether the facts disclosed by this record amount, in law, to a delivery of the deed in question. It appears from the evidence adduced that Hannah Brown, being the owner of the property in dispute and another tract of the same size adjoining it on the north, on the 20th day of June, 1883, caused two deeds to be prepared by J. H. Brown, a justice of the peace of the city of Lincoln, one covering the north portion to Sam Westerfield, one of the defendants, and the other covering the south tract to Ruthie Brown, subject to a life interest in her father, James Brown. These deeds, properly witnessed, were signed and acknowledged by both Hannah and James Brown before said justice of the peace. The magistrate is the only person who testified as to what transpired at the time, and the disposition made of the deeds. He states, in substance, that he had acted as Mrs. Brown's legal adviser, having at various

times transacted considerable business for her; that on the date already mentioned, at her request, he went to see her, when she informed him it was her desire that the property be divided between her two children, Ruthie and Sam, the former being then some nine or ten years old, reserving a life interest in her husband in the home property; that her two sons, Jimmie and Louis, had abandoned her, and it was her wish to make a division of the property then for fear they would come in for a share at her death.   In pursuance of this request, the two deeds were prepared by the witness, and then signed and acknowledged.   The magistrate was requested to keep them and place them upon record after her death.   He carried them for two or three days thereafter, when he went to Mrs. Brown's place of abode, put them in a tin box in which she kept her tax receipts and other papers, and at the time the witness, at Mrs. Brown's request, promised to see to the recording of the deed in question upon her death; that four or five times thereafter, the last one being about a week or ten days before Mrs. Brown died, she talked the matter over, expressing herself satisfied with the disposition she had made of the property; that immediately after the death of Mrs. Brown, the justice, with James Brown, looked for the deed, and then discovered that it was gone. Sam Westerfield testified that he had never seen the deed, but had heard it spoken of by several; and that the deed to himself he had recorded August 28, 1883, prior to his mother's death. Ruthie Brown testified that about a week before her mother died, the latter told her, as she had frequently stated before, that the place was Ruthie's and it had been fixed so that she would

have a home; that about two weeks before the trial witness asked Sam Westerfield about the deed, and he replied that he had it, or knew where it was. This conversation Westerfield denies having ever occurred.

The matter of contest is whether there was in law a delivery of the deed, for a delivery is indispensable to its binding effect. But, as was said by Chief Justice LAKE in *Brittain v. Work*, 13 Neb., 347: "No particular act or form of words is necessary to constitute a delivery of a deed. Anything done by the grantor from which it is apparent that a delivery was intended, either by words or acts, or both combined, is sufficient." Delivery of a written instrument like a deed is largely a question of intent to be determined by the facts and circumstances of the case. In the case at bar it depends on whether the intention of the grantor at the time was that the deed should operate as a muniment of title to take effect presently. In other words, did Mrs. Brown part with control over the instrument and place the title in her daughter? If such was the purpose, the delivery was complete, and the title to the property passed. (1 Devlin, Deeds, secs. 260-262; *Warren v. Swett*, 31 N. H., 332; *Jordan v. Davis*, 108 Ill., 336; *Burkholder v. Casad*, 47 Ind., 418; *Masterson v. Cheek*, 23 Ill., 73.) From an examination of the evidence we are satisfied that it establishes a delivery of the deed. It was placed in the hands of the magistrate who took the acknowledgment to hold for the grantee. This was sufficient to carry the title to the land. (*Byington v. Moore*, 62 Ia., 470; *Hinson v. Bailey*, 73 Ia., 544; *Black v. Hoyt*, 33 O. St., 203; *Lessee of Mitchell v. Ryan*, 3 O. St., 377; *Albright v. Albright*, 70 Wis., 528; *Ball v. Foreman*, 37 O. St., 132.)

Brown v. Westerfield.

In the case last cited the grantor delivered the deed to a third party with the understanding that he should retain the custody of the same until the grantor's death, when he was to deliver to the grantee. It was held to be the grantee's deed *in præsenti*, and that the subsequent destruction of the instrument by the grantor did not have the effect to divest the title of the grantee. Cassody, J., in delivering the opinion of the court in that case cites numerous authorities which sustain the proposition enunciated in the case. In *Hinson v. Bailey*, 73 Ia., 544, Eva Hinson went to a justice of the peace and signed and acknowledged a deed before him conveying certain lands to her children. She left the deed in the possession of the magistrate, with directions to retain it until her death, and then have it recorded. The justice told her that she could have the deed whenever she desired it, but she replied: "I don't want it. You must keep it until I die." It was held to be a good delivery and that the deed took effect immediately upon the delivery to the justice. (See, also, *Wittenbrock v. Cass*, 42 Pac. Rep. [Cal.], 300; *Bury v. Young*, 1 Am. L. Reg. & Rev., n. s. [Cal.], 140.) It is true in the case before us that, after the delivery of the deed to Justice Brown, he took it to the grantor and put it in a box where she kept her papers; but it was not with the intention of surrendering the deed, nor did that fact have the effect to divest the title of the grantee. Having once passed, it could not be divested in that way. (*Bunz v. Cornelius*, 19 Neb., 107; *Connell v. Galligher*, 39 Neb., 793.)

It is argued by appellants that the conveyance was intended to operate in the nature of a testamentary disposition of the property, not to take

effect until the death of Mrs. Brown, and authorities are cited in the brief to the effect that such a deed is invalid. The facts do not warrant such conclusion. The intention clearly was that the deed should take effect at once. The recording alone was to be deferred until Mrs. Brown's death. This is not a case where a grantor has placed a deed in a depository to be delivered to the grantee upon the death of the grantor, reserving the right to recall the deed at any time. The authorities cited by counsel for appellants are, therefore, not applicable here. We are constrained to hold that the trial court was, under the circumstances, justified in finding a sufficient delivery of the deed. The decree is

AFFIRMED.