TEOFIL NENEMAN, APPELLEE, V. CHARLES E. RICKLEY, APPELLEE: THOMAS W. ARMSTRONG, APPELLANT.

FILED JUNE 27, 1923. No. 22450.

1. **Husband and Wife:** ANTENUPTIAL CONTRACT. An antenuptial contract in consideration of marriage, and the mutual exchange *in præsenti* of an interest in the property of the other, if fairly and equitably made and entered into in good faith, will not be disturbed after the death of one of the parties.

2. ———: ———: CONSTRUCTION. The antenuptial agreement set forth in the opinion *held* to be an executed and not an executory contract, and to convey *in præsenti* an undivided one-half interest in the property of each of the contracting parties to the other. *Held*, further, that it was sufficient to vest in the survivor all the property of the deceased party, subject to the claims of creditors.

3. ———: ———: CONSIDERATION. The subsequent marriage of the parties and the mutual grants contained in the instrument furnished sufficient consideration to uphold the instrument.

4. **Evidence:** ADMISSIBILITY: DEEDS. The certificate of a notary public in proper form to the acknowledgment of a conveyance of real estate is sufficient to authorize the deed to be given in evidence without further proof of its execution.

5. **Evidence** examined, and *held* not to sustain the charge of fraud, or the charge that the terms of the instrument are unconscionable.

APPEAL from the district court for Douglas county: CARROLL O. STAUFFER, JUDGE. *Affirmed.*

*W. W. Slabaugh* and *A. H. Murdock,* for appellant.

*E. C. Hodder, W. L. Baughn* and *Joseph Rapp, Jr.,* contra.

Heard before LETTON, ROSE, DAY and ALDRICH, JJ., REDICK, District Judge.

LETTON, J.

Plaintiff, on September 3, 1920, entered into a written contract with Charles E. Rickley, as the owner of the property, for the purchase of certain real estate in Omaha.

Part of the price was paid in cash, and the balance was to be paid in monthly payments. None of these deferred payments has been made because one Thomas W. Armstrong claims an interest in the real estate as the heir of his mother, Mary A. Rickley, formerly Mary A. Armstrong. He asserts that on her death her husband, Charles E. Rickley, became entitled to only a one-fourth interest in the property, and that he, Armstrong, became the owner of a three-fourths interest. Plaintiff prays that the title to the property be quieted in him and Rickley, as against Armstrong, and that he be allowed credit on the contract for the amount that Rickley has collected as rent, with interest. Rickley filed a cross-petition setting upon an antenuptial agreement and contract whereby, on the death of his wife, Mary A. Rickley, the absolute title to the property vested in him. He alleges that, upon the settlement of his wife's estate, the decree of the county court established the heirship to the property in him; that he has been in possession of the same since 1909, and that Armstrong is guilty of laches, and is estopped from claiming any title to the property.

Armstrong pleaded to the petition, and to the cross-petition of Rickley, alleging that the contract referred to was procured by Rickley without consideration; that Rickley falsely represented to his mother that he was possessed of real estate of equal value to that of her property, and that he would convey to her a half interest in the same; that her property was worth $7,500, while his property was worth only $1,250; that the contract was abandoned, and that neither party ever received a part of the income arising from the property belonging to the other. He denies delivery of the contract, and pleads that by reason of Rickley's attitude toward the possession during the lifetime of Mrs. Rickley, and his filing an inventory, as her administrator, returning the property as a part of her estate, he is now estopped from claiming any benefit under the terms of the contract. He

prays that his title be quieted to a three-fourths interest. The court found against Armstrong, and he appeals.

The facts are that about June 1, 1909, Mary A. Armstrong, the mother of the defendant Armstrong, who was her only child, entered into an antenuptial agreement with Rickley. A few days afterwards they were married. She died September 10, 1913. After the marriage they occupied one of the flats on the property as their home for several years. Rickley testified that he had taken his wife on a trip to Oklahoma with him in 1913 and she became ill. They returned to Omaha; he employed two nurses to care for her, and while he was absent on business two of her sisters took her to their home in Lincoln, where she died. A copy of what appears to be an unprobated will executed by Mrs. Rickley in Lincoln a short time before her death was received in evidence. In this bequests of $500 each were made to her two sisters who lived in Lincoln, a one-fourth interest in the Omaha property was left to her husband, and Armstrong was made residuary legatee. There is no proof as to the condition of Mrs. Rickley, or the circumstances under which this document was executed.

Some sort of a compromise, or settlement, was afterwards had whereby Rickley furnished money to settle the claims of creditors and for funeral expenses, etc., and the alleged will was never offered for probate. Armstrong does not appear to have been a party to this agreement. Rickley was appointed administrator of the estate. He returned an inventory listing the property as belonging to the estate of his wife. It is said by Armstrong that, in the petition for the appointment of an administrator, Rickley alleged that he and Armstrong were the sole heirs at law of the deceased. This is an error; the petition alleges "that the heirs and *other persons interested* in the estate" are himself and Armstrong. Rickley also filed a claim against his wife's estate for money advanced to her and money expended on her property. He testifies that he paid off a number of creditors and took assignments

of their claims (which are included in the claim filed by him) to himself for the purpose of settling the estate promptly. These facts are relevant, but not controlling. It is worthy of note, also, that the county court made a finding in the final decree reciting the terms of the antenuptial agreement as to survivorship, so that Rickley was evidently claiming under it at that time.

The antenuptial agreement and conveyance is as follows:

"This agreement entered into this —— day of June, 1909, by and between Charles E. Rickley and Mary A. Armstrong, both of the city of Omaha and Douglas county, Nebraska, witnesseth:

"1.    That these parties hereby agree to enter into the marriage relation and hereafter live together as husband and wife.

"2.    That all moneys or property hereafter acquired or accumulated by them, or either of them, shall be held in joint and equal ownership.

"3.    That each of these parties hereby grants, bargains, sells and conveys to the other an undivided one-half ($\frac{1}{2}$) interest in all the property, real or personal, which he or she now owns for the purpose and with the intent of vesting in both parties the joint ownership of all property at this date owned in severalty by either of them.

"4.    In case of the death of one of these parties, all of said property shall, subject to the claims of creditors, vest absolutely in the survivor.

"5.    Any property or interest in property owned by the said Charles E. Rickley and situated in Sheridan county, Nebraska, is not intended to be embraced within or affected in any way by this contract, but is, on the contrary, expressly excepted from its operation.

"6.    The consideration for this agreement is the marriage to be entered into pursuant to its terms and the mutual promises and grants herein contained.

"Witness:   J. J. Sullivan.

"C. E. Rickley,

"Mary A. Armstrong."

The instrument is acknowledged before a notary public in the usual form for a conveyance.

Armstrong insists that the antenuptial contract is void, and is contrary to the laws of this state; that it does not create a joint tenancy; that it is unconscionable and was a fraud upon Mrs. Armstrong and the appellant, there being no just consideration for it; that it was abandoned by the parties, and that there is no competent evidence that it was ever executed.

Under section 4818, Comp. St. 1922, the certificate of a notary public to the acknowledgment is made presumptive evidence of the execution of the instrument. Under this section the certificate of the notary "shall be received in all courts of this state as presumptive evidence of the facts therein certified to." In *Burbank v. Ellis,* 7 Neb. 156, it is said: "The function of an acknowledgment is twofold—to authorize the deed to be given in evidence without further proof of its execution, and to entitle it to be recorded." To the same effect are *Horbach v. Tyrrell,* 48 Neb. 514; *Linton v. Cooper,* 53 Neb. 400; *Wilson v. Wilson,* 85 Neb. 167.

It was stipulated that if J. J. Sullivan were present he would testify that he knew the signatures of the parties, and that the signatures annexed to the contract were those of Charles E. Rickley and Mary A. Armstrong. The proof is sufficient, and the instrument was properly received in evidence.

We cannot agree to the contention that the contract is void at common law, or that it is contrary to the laws of this state. The third paragraph constitutes and is a valid conveyance of an undivided one-half of the property of each to the other. The consideration was the mutual transfer and the contemplated marriage. The language of the paragraph constitutes a grant each to the other *in præsenti.* In the absence of fraud, or mistake, such a conveyance is valid.

As to the charge of fraud, the only ground of fraud alleged is that the property which was conveyed to Mrs. Armstrong by Rickley was disproportionate in value to that conveyed to him by her. Mr. and Mrs. Rickley lived together from June 5, 1909, until sometime in 1913, and there is no evidence that during any of this time the wife ever complained of the transaction. It is difficult to tell from the evidence just what the value of the respective properties was. When the incumbrance upon the property of the wife is considered, it probably did not much exceed in value that of Rickley. At all events, there is no ground to set aside the contract as unconscionable.

It is next said that the contract did not create a joint tenancy, which would vest the estate in the survivor. Whether it created a joint tenancy or not is immaterial. We see no reason why, upon the death of one party, the property may not vest absolutely in the survivor, subject to the claims of creditors, as the contract provides. This was evidently the intent of the parties, which section 5594, Comp. St. 1922, makes it the duty of the court to carry into effect. *Sanderson v. Everson*, 93 Neb. 606. At the time the parties executed the contract Armstrong had been following an occupation for more than 10 years. He was 40 years of age at the time of the trial. Both of the contracting parties were of mature age, each had property, the disposition of which by the law of descent and distribution, in case of the death of either, intestate, might result in depriving the survivor of comfort and support in his or her declining years. Each desired to provide for the future well-being and content of the other, a laudable and lawful desire. Such a contract is in favor of marriage and, especially in the case of persons of mature years possessing property, and having children by a former marriage, tends to prevent discord and unhappiness in the marital relation. *Rieger v. Schaible*, 81 Neb. 33; *Tiernan v. Tiernan*, 107 Neb. 563.

Both the present estate and the right of the survivor to take passed upon the execution of the contract. The con-

tract required nothing further to be done by either party. It was executed with all the formalities of a deed of conveyance, and was such in fact. It was not an executory but an executed contract, and required no trustee to carry it into effect. *Neves v. Scott,* 50 U. S. 196; *Smith's Exr. v. Johns,* 154 Ky. 274; *Collins v. Bauman,* 125 Ky. 846.

It is asserted that the contract was abandoned by the parties. It was recorded in the miscellaneous records of Douglas county in February, 1912. Both before and after the death of his wife, Rickley contributed substantially of his own funds for the repair and unkeep of the property. Other facts are in evidence which convince us that there was no intention on his part to abandon the estate conveyed, and even if Mrs. Rickley intended to abandon it, of which there is no definite proof, this could not affect a vested right of Rickley.

The judgment of the district court is

AFFIRMED.