(No. 16246.—Decree affirmed.)
Lou KOHLER, Appellant, *vs.* ANNA KOHLER *et al.*
Appellees.

*Opinion filed February 17, 1925.*

1. CONTRACTS—*equity will not relieve party of contract because other party was incompetent.* Equity will not relieve a complainant of a contract simply because the other party, as alleged in complainant's bill, was not mentally competent.

2. HUSBAND AND WIFE—*what is not an agreement to secure a divorce.* Where a husband and wife, upon separation, enter into an agreement in regard to the division of property between them, a provision in the contract that in case either of the parties shall institute divorce proceedings the wife will not ask for alimony and solicitors' fees does not render the agreement void as a contract to secure a divorce, and the agreement is valid where neither the separation nor a divorce is a part of the consideration.

3. SAME—*parties may settle property rights by a post-nuptial agreement.* A husband and wife may, by written post-nuptial contract based upon a valuable consideration, release to each other his or her rights in the other's property and estate and thereby extinguish all rights as surviving spouse, including the right of dower.

APPEAL from the Circuit Court of Union county; the Hon. A. E. SOMERS, Judge, presiding.

A. NEY SESSIONS, and JAMES LINGLE, for appellant.

CHARLES C. CRAWFORD, and CHARLES E. FEIRICH, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant filed her bill in the circuit court of Union county praying the cancellation of a certain agreement entered into between herself and her husband on October 17, 1923, and that deeds made and transactions entered into in pursuance thereof be canceled and set aside and she be restored to all her rights as widow of her deceased husband, Louis B. Kohler. Upon hearing in open court on the merits

316—3

her bill was dismissed for want of equity and she brings the cause here for review, contending that the contract was void because it was without consideration; that it was unfair and inequitable; that it was brought about by undue influence of outside parties; that both she and her husband were at the time incompetent to contract, and for the further reason that the contract by its conditions and provisions encouraged a divorce and separation and was contrary to public policy. By her amended bill she avers that she is ready, willing and able to re-pay the consideration received by her in the division of her husband's property under the contract.

The record shows that appellant and her husband, Louis B. Kohler, were married on March 12, 1900, and that they lived together until his death, on October 23, 1923; that they had no children; that he left surviving him appellant and appellees (a mother, brother and sister,) as his only heirs-at-law; that he died intestate, leaving real estate of the value of about $3000 and personal property amounting to near $15,000. On October 17, 1923, appellant and her husband entered into the written agreement complained of, and on October 23, 1923, Kohler committed suicide. The agreement recites that unfortunate differences and disputes had arisen between the parties; that they had separated, with intent to live apart during the remainder of their lives; that the husband had paid to the wife the sum of $3000 in government bonds and conveyed to her the home in the city of Anna, Illinois; that in consideration of the premises each should release all interest in and to the property of all kind and character of the other and that the wife could not incur or contract any debts on the husband's credit, "and that in case an action for divorce shall be instigated by and for either of the parties hereto, said wife will not ask for alimony or counsel fees."

There is no contention that appellees, heirs-at-law of Kohler, had anything whatever to do with making the con-

tract, but appellant urges that it was brought about by the influence of outsiders who were not parties to it. This contention is not borne out by the record. The evidence shows that the husband's estate amounted to $17,499; that by the contract appellant received the sum of $3000 and real estate of the value of $3000; the latter she re-sold to Kohler for that amount in cash, receiving a total of $6000 of his estate. It is also shown by her witness John H. Ligon that early in the summer of 1923, before the contract in question was executed or considered by Kohler, she stated that she wanted a settlement with her husband; that it was impossible to live with him; that she had tried for twenty years to get along with him and was not going to try any longer; that if her husband would give her one-third of all he had she would settle; that she told Ligon at that time what his estate amounted to. The evidence also shows that she told others that she was going to leave her husband; that they could not get along together. The evidence also is that when she first made demand on her husband that he give her one-third of all he had he thought it was too much and offered her $2000. It cannot be said that the contract is unconscionable or inequitable under such circumstances. While at his death she as his widow would but for this contract have been entitled, under the Statute of Descent, to one-half of the real estate and all of the personal property, the contract was not made in contemplation of Kohler's death. As far as she knew or had reason to believe he would continue to live for some years, and the fact that he died by his own hand a few days thereafter, under which circumstance she would have come in for a larger estate in the absence of the contract, does not show the contract to have been unconscionable or inequitable. Had he continued to live the contract would have been considered fair and might have proved of more than equitable value to her. The fact of his death does not render unfair a contract that was fair when made. Moreover, the evidence

shows that it was entered into at her instance and was just what she demanded.

Considerable evidence is offered on behalf of appellant to show that for some time after Kohler had sold his farm, in 1909, he was unbalanced; also that during the month of September, prior to making the contract, appellant had suffered from sciatic rheumatism, had been in a sanitarium and was sick and nervous, and the argument is made that neither was competent to contract at the time of the making of the contract. Appellant could not hope to gain any benefit from the fact that Kohler was not competent at the time of the making of the contract, if such were true, as equity would not at her instance relieve her from the contract simply because she had contracted with one who was not mentally competent. The argument of her counsel that both parties to the contract were incompetent and therefore she ought to be relieved is more novel than tenable under the record in this case, as the great preponderance of the evidence shows that both parties were capable of contracting. This is shown not only by the evidence of lay witnesses, some of whom were called by appellant, but by the testimony of two physicians who had treated both parties.

The evidence shows that on the morning in which Kohler took his life appellant had started to move her belongings into the home of a neighbor; that subsequent to the making of the contract and prior to the day of the death of Kohler these parties had lived in the same house, though occupying different rooms. On this day, while appellant was absent moving some bedding to the home of the neighbor, an alarm came that her husband had committed suicide. Upon returning to their home she found that he had taken carbolic acid. He died a short time thereafter.

The principal argument of counsel for appellant is that the contract was entered into for the purpose of stimulating or inducing one party to institute divorce proceedings and amounts to collusion between the parties to secure a decree

of divorce, and that such a contract is against public policy and void. We have quoted herein the only language in the contract touching the question of divorce, and it amounts to an agreement that in case either of the parties should institute divorce proceedings the wife will not ask for alimony and solicitors' fees. This is not an agreement to secure a divorce. The contract also recites that the parties have separated, with intent to live apart. There is nothing in the contract to indicate that such separation was induced by the consideration in the contract or that the separation was itself a consideration for the contract. The contract was evidently one dividing up the property between them owing to unfortunate differences that had arisen. A husband and wife may, by written post-nuptial contract based upon a valuable consideration, release to each other his or her rights in the other's property and estate and thereby extinguish all rights as surviving spouse, including the right of dower. *Edwards* v. *Edwards,* 267 Ill. 111; *Stokes* v. *Stokes,* 240 id. 330; *Carling* v. *Peebles,* 215 id. 96; *Crum* v. *Sawyer,* 132 id. 443.

Counsel urge that the purpose of the contract of settlement was to secure a divorce. The contract speaks for itself, and conversations leading up to the contract are not competent evidence to be considered by the court. However, the chancellor granted a wide latitude in the examination of witnesses, and while it does not appear from the evidence admitted by him that there was an agreement to secure a divorce, had such an agreement been an element of the contract it would, unless shown to be the consideration for the contract, be rejected and the division of property, if equitable, sustained. *Luttrell* v. *Boggs,* 168 Ill. 361.

A reading of the record in this case discloses that there is no evidence to support the charge that the contract was made under coercion, duress or undue influence either from the deceased or anyone acting for him, but that, on the other hand, it originated with appellant. The evidence shows that

she requested a settlement in which she should receive one-third of the property, but that Kohler objected and offered to settle for $2000. The witness Ligon, called by appellant, testified that he told Kohler he should make the amount $3000 and give her the home, as she requested.

We are of the opinion that appellant received just what she contracted for under a contract made on her demand and which both she and her husband understood and were competent to make. The chancellor therefore did not err in dismissing her bill for want of equity.

The decree will be affirmed.          *Decree affirmed.*