HAZEL DELL JORGENSEN ET AL., APPELLANTS, V. ARTHUR F. CRANDELL ET AL., APPELLEES.

277 N. W. 785

FILED FEBRUARY 18, 1938. NOS. 30065, 30066.

*Cook & Cook,* for appellants.

*York & York* and *F. J. Byrd, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ., and CHAPPELL, District Judge.

CHAPPELL, District Judge.

This is an action by plaintiffs Hazel Dell Jorgensen and William Jorgensen, her husband, appellants, to partition 80 acres of land in Dawson county, Nebraska, and an appeal from a part only of the final decree of the county court of Dawson county, Nebraska, entered in In re Estate of George W. Crandell, deceased. Both cases were consolidated and tried together by agreement of the parties. The trial court denied partition and affirmed the final decree of the county court. Upon appeal to this court, both cases are consolidated by stipulation for the purposes of brief, argument and decision. They involve like questions of law and fact, and this opinion disposes of both cases.

The questions presented for our determination are (1) the validity of a postnuptial agreement made by and between George W. Crandell and Euphemia C. Crandell, his wife, in Los Angeles, California, on December 24, 1918, and (2) the validity of an election by the guardian of the widow to renounce the will of her deceased husband, which will was made in conformity with the postnuptial agreement, and take under the statutes of Nebraska. It is conceded that, if the postnuptial agreement was valid and enforceable in Nebraska, it is decisive of both questions.

Keeping this in mind, we find from an examination of the record that George W. Crandell and Euphemia C. Crandell were married in Nebraska on March 9, 1909. No issue resulted from their marriage, but each, at the time, had grown children of a previous marriage and certain separate money, interests and real property in their own right. In 1914 they moved to Los Angeles, California, where they lived together as husband and wife until May,

1931, when the wife, ill, went to a sanitarium where she stayed until after the husband's death on July 20, 1931. In August, 1931, the wife returned to Nebraska with her daughter Hazel Dell Jorgensen, appellant, and on September 8, 1931, the county court of Dawson county, Nebraska, appointed one Carl E. Faught her guardian because of incompetency by reason of old age. The wife died on September 14, 1931.

On December 24, 1918, while living in California as husband and wife, they entered into a postnuptial agreement which provided in substance that, in consideration of their mutual covenants and wishes, the properties which they then possessed and which they would obtain in the future, except as therein mentioned, should be their separate estate respectively and go to their legal heirs or as they might see fit to thereafter convey or bequeath same respectively; that certain described real estate and all that he should acquire in the future would be the husband's estate, and his wife quitclaimed therein all the interest that she might have in said property and all property which he might thereafter possess, including her right of inheritance; that certain other described property and all that she should acquire in the future would be the wife's separate estate, and the husband, likewise, quitclaimed to her, including his right of inheritance. In consideration of the foregoing, the wife granted her husband a life estate in certain described property, a part of her separate estate in California, that he might enjoy the income therefrom during his lifetime, and the husband granted his wife a life estate in and to the 80 acres in Dawson county, Nebraska, a part of his separate estate, that she might enjoy the income therefrom during her lifetime. The contract then provided: "It is the intention of this agreement and mutually understood by and between both parties that by these presents each party forfeits to each other respectively their right of inheritance in and to all properties * * * of which each party shall respectively become possessed in the future, excepting that each party shall receive a life

estate only as mentioned in the foregoing. It is mutually understood that this agreement is made for the purpose of preserving to the heirs of each party respectively all properties of which the respective parties are now possessed or shall obtain in the future."

Thereafter on May 31, 1919, they both lawfully made, executed and delivered a deed for certain real property jointly owned by them in Los Angeles county, California, to the husband, which reads in part: "This deed is given to carry out the mutual agreement of the parties hereto; that said property shall become vested in the grantee, as the grantee's sole and separate property, free from all interest, title or claim of the grantor now existing or which may hereafter arise by reason of the marital relation of said parties, and is so accepted by said grantee. To have and to hold to the said grantee, his heirs or assigns forever." On November 3, 1925, the wife made her will with a codicil thereto as of February 28, 1928, and on June 13, 1930, the husband made his will, all in conformity with and reaffirming the postnuptial agreement. Appellant was present when her mother's will and the codicil were made, knew their contents, and testifies that her mother was competent at that time and thereafter until about the time of her return to Nebraska. She knew that her mother bought and sold real property in her own right and had her own bank account while living in California, having made some investigation of their respective properties at times when she visited them there. After the wife's death, her will and codicil were probated in Los Angeles county, California, and Dawson county, Nebraska. Appellant acted as executrix as provided in the will to the close of administration of the estate, and then took all the mother's separate property as sole devisee under the will,—her four brothers having been left only one dollar each.

After the husband's death, his will was probated in Los Angeles county, California, on August 17, 1931, and the estate duly closed without an election by the widow in that jurisdiction to renounce the will and take under the statute.

At the time of appointment of a guardian for the wife September 8, 1931, the county court of Dawson county, Nebraska, in its order, recited that the husband's will had been admitted to probate in Los Angeles county, California, but that it had not yet been filed in Dawson county, Nebraska, where the deceased husband owned the lands in controversy; that it was for the best interests of the widow to renounce the will and take under the statute; that the guardian should procure a duly authenticated copy of the will and its probate as soon as possible and file it, together with a formal renunciation, in the name of the widow. The husband's will, by ancillary proceedings, was later probated in Dawson county, Nebraska, but, in the meantime, the widow's death occurred on September 14, 1931, after which the guardian filed a purported renunciation and election for her therein as guardian in her lifetime. The county court, upon hearing, found that the election was ineffectual to constitute a valid renunciation of the will or an election on behalf of the widow to take under the statute, and that the postnuptial agreement barred and estopped the widow and the appellant, her devisee, from claiming any interest in the estate of George W. Crandell, deceased, under the laws of Nebraska. The district court affirmed these findings and judgment of the county court.

Before this decree was entered, appellants filed an action in the district court for Dawson county, Nebraska, against all the children devisees of George W. Crandell, deceased, and Hazel Dell Jorgensen as executrix of her mother's estate, to partition the real estate involved, claiming a one-fourth interest by reason of the alleged validity of the renunciation and election heretofore described, and alleged invalidity of the postnuptial agreement in Nebraska. Upon trial, the district court found the postnuptial agreement to be valid and binding under the laws of California and not illegal or against public policy in Nebraska, and that it should be recognized and enforced in Nebraska; that it did not purport to convey land in Nebraska, but barred

and estopped the widow inheriting or claiming any lands of her husband or any interest therein in Nebraska, and found generally for the defendant devisees.

It is admitted that section 158 of the Civil Code of California was in full force and effect at all times, and that it provides: "Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might if unmarried; subject, in transactions between themselves, to the general rules which control the action of persons occupying confidential relations with each other, as defined by the title on trusts."

As early as 1883, in *Schuler v. Savings & Loan Society*, 64 Cal. 397, 1 Pac. 479, the supreme court of California, after quoting this statute, said: "Under this law husband and wife are not one in respect to the separate, joint or common property, which may have been acquired by either; they are coequals, and each is allowed to contract with the other in regard to such property, as either might contract with a stranger. The rights of either in respect to such property are substantially equivalent, differing chiefly in the single circumstance that the husband, being still considered the head of the family, is entitled to manage and control the property of the wife for the benefit of both, and to dispose of the common property, except for the purpose of defrauding the wife of her rights therein. The transaction between the husband and wife, relating as it did to real property of which they were joint owners, was, therefore, one in which they could engage with each other." In *Vieux v. Vieux*, 80 Cal. App. 222, 251 Pac. 640, the court said: "By agreement between husband and wife the status of any property owned by them may be changed from separate to community, and *vice versa*." See, also, *Corker v. Corker*, 87 Cal. 643, 25 Pac. 922; *Young v. Young*, 126 Cal. App. 306, 14 Pac. (2d) 580; *Hoeck v. Greif*, 142 Cal. 119, 75 Pac. 670; *Perkins v. Sunset Telephone & Telegraph Co.*, 155 Cal. 712, 103 Pac. 190.

Whether or not a husband and wife may contract with

each other under modern statutes depends upon the nature of the statute in force in the jurisdiction whose law governs the occasion and the construction that the courts of such jurisdiction put upon the statute applicable. 30 C. J. 671. This court has said that the validity of a contract, the obligations thereof, and capacity of the parties thereto are to be determined by the *lex loci contractus* unless there is something in the contract which is prohibited by express statute or infringes upon some positive rule of public policy. *Delahaye v. Heitkemper,* 16 Neb. 475, 20 N. W. 385; *Benton v. German-American Nat. Bank,* 45 Neb. 850, 64 N. W. 227; *Farmers State Bank v. Butler,* 101 Neb. 635, 164 N. W. 562. See, also, 30 C. J. 726.

In *Polson v. Stewart,* 167 Mass. 211, 45 N. E. 737, Justice Holmes, in a similar case, where the agreement was made in North Carolina, said: "But it is said that the laws of the parties' domicil could not authorize a contract between them as to land in Massachusetts. Obviously this is not true. It is true that the laws of other states cannot render valid conveyances of property within our borders which our laws say are void, for the plain reason that we have exclusive power over the *res.* * * * But the same reason inverted establishes that the *lex rei sitæ* cannot control personal covenants, not purporting to be conveyances, between persons outside the jurisdiction, although concerning a thing within it." The principle that the *lex rei sitæ,* as such, governs as to real property is also subject to an exception as to obligations which, although in relation to real property, do not directly affect the title to or interest in the property itself. Annotation, 18 A. L. R. 1558; 12 C. J. 478.

In *Kocher v. Cornell,* 59 Neb. 315, 80 N. W. 911, discussing the question of whether or not a wife had bound her separate estate when all that she had was a prospective inheritance of real property from her husband after his death, this court said: "A mere hope of succession to an estate is not property." The real estate involved was always the fee simple property of the husband. As part

of the postnuptial agreement he gave the wife a life estate therein which the evidence shows she enjoyed throughout her life as contemplated by the parties. Aside from the life estate granted therein, the wife had a mere hope of succession to real property, an estate, should the husband's death be precedent, which she waived by the provisions of the postnuptial agreement. We believe the postnuptial agreement to be contractual only as mutual personal covenants in so far as waiver of inheritance is concerned, and, being valid and enforceable in California, it is valid and enforceable in Nebraska. We find that it is not prohibited by an express statute and that it is not contrary to the public policy of this state. The natural tendency of all courts now is to permit as broad a field as possible for contractual relationships by married women under existing statutes.

To concede that the postnuptial agreement in its form is an attempted conveyance of real property in Nebraska places the appellant in no better position. The agreement itself is a legal conveyance of real property in Nebraska if the wife then had a present property right therein. See sections 76-103 and 30-105, Comp. St. 1929. We said as early as *Furrow v. Athey,* 21 Neb. 671, 33 N. W. 208: "A deed of conveyance of real estate, executed by the husband directly to the wife, in the absence of fraud, and when neither the rights of creditors nor subsequent purchasers intervene, will convey to her such real estate without the intervention of a third party as trustee." The circumstances in the case at bar disclose nothing but good faith. The rights of creditors and subsequent purchasers or innocent parties are not involved. The language of the contract constitutes a grant each to the other *in præsenti.* See, also, *Neneman v. Rickley,* 110 Neb. 446, 194 N. W. 447.

The signatures of the husband and wife thereon were properly identified. Their genuineness is not controverted. The instrument was duly acknowledged as husband and wife before a notary public with seal attached, as required

by the laws of California. Section 76-206, Comp. St. 1929, provides in part: "In all cases provided for in section 76-204 of this chapter, if such acknowledgment or proof is taken before * * * a notary public or other officer using an official seal, the instrument thus acknowledged or proved shall be entitled to be recorded without further authentication." The certificate of acknowledgment of a notary public of another state under his official seal is sufficient proof of the execution of a deed of lands in Nebraska for its admission in evidence in an action pending in Nebraska. *Galley v. Galley*, 14 Neb. 174, 15 N. W. 318. A deed of lands situated in this state, executed in another state and acknowledged there before a notary public who attaches his official seal to the certificate of acknowledgment, is presumed to have been executed in accordance with the laws of that state and, though not witnessed, is entitled to be received in evidence in this state without other proof that the grantors therein actually executed and delivered the deed. *Schields v. Horbach*, 49 Neb. 262, 68 N. W. 524; *Dorsey v. Conrad*, 49 Neb. 443, 68 N. W. 645. See, also, sections 76-204, 76-215, Comp. St. 1929.

The postnuptial agreement was thus properly acknowledged, and the acknowledgment should have been received in evidence as a part of the agreement itself. We consider the fact that it was not recorded until after the death of the parties of no importance under the circumstances. Delivery is presumed from the facts and circumstances appearing in the evidence. 18 C. J. 413; *Issitt v. Dewey*, 47 Neb. 196, 66 N. W. 288; *Brown v. Westerfield*, 47 Neb. 399, 66 N. W. 439; *Home Fire Ins. Co. v. Collins*, 61 Neb. 198, 85 N. W. 54; *Ladman v. Ladman*, 130 Neb. 913, 267 N. W. 188. Their mutual covenants, quitclaims by each party of all interest in the other's property and the grant of life estates therein, were sufficient consideration for the agreement. *Wulf v. Wulf*, 129 Neb. 158, 261 N. W. 159; 30 C. J. 637. Therefore, we find nothing in the laws of Nebraska which make this an invalid conveyance if conceded to be real property.

The wills of husband and wife, made in conformity with the postnuptial agreement, have both been probated in California and Nebraska. A will executed under an agreement founded upon a valuable consideration is contractual as well as testamentary. In the latter aspect it may be revoked without the consent of the beneficiary, but not in the former. *Nelson v. Schoonover,* 89 Kan. 388, 131 Pac. 147. A will duly executed in pursuance of an agreement based upon a valuable consideration becomes itself, in a sense, an enforceable contract. 1 Schouler, Wills (6th ed.) sec. 691. The probate of a will is conclusive unless reversed, and equity cannot vacate the same. *Williams v. Miles,* 63 Neb. 859, 89 N. W. 451. The probate thereof cannot be collaterally attacked. *Kirk v. Bowling,* 20 Neb. 260, 29 N. W. 928. See, also, *Andersen v. Andersen,* 69 Neb. 565, 96 N. W. 276; *Byron Reed Co. v. Klabunde,* 76 Neb. 801, 108 N. W. 133. A will is not evidence of title unless probated. *Pettit v. Black,* 13 Neb. 142, 12 N. W. 841. The converse thereof is that, when probated, it is evidence of title. See section 30-221, Comp. St. 1929. Both wills, made in conformity with and a part performance of the contract, having now been probated, vested all the separate real property of the husband in his devisees therein, and all the separate property of the wife in appellant, her devisee therein. Appellant, having taken as sole devisee of her mother's will, must now abide by its provisions and is barred from recovery in this action. It is only land not lawfully devised that will be inherited under the statute of descent from a deceased spouse. Comp. St. 1929, sec. 30-101. We find that a married woman's liability to be estopped by her contracts is coterminous with her capacity to contract. If the contract is valid, she is estopped. 30 C. J. 776. An heir stands in privity with an ancestor, and an estoppel enforceable against the ancestor is likewise enforceable against the heir. 21 C. J. 1182. In the case at bar the wife of George W. Crandell, being estopped by her postnuptial agreement, together with the circumstances of ratification, recogni-

zance and performance, then appellant, sole devisee under her will, already probated and made in conformity with the contract, is also estopped from repudiating the postnuptial agreement and from claiming to inherit any part of George W. Crandell's estate.

The parties lived together nearly 10 years before they made the contract and conformed to it by performance for more than 12 years thereafter until death. It was made, we must assume from the evidence, to promote peace and harmony between the parties and their respective children, and was without disadvantage to any of the parties. It was reasonable in its terms, entered into with a full opportunity for and, in so far as we can determine, with knowledge of the facts, and it has now been fully executed. We find generally that courts of equity give full force and effect to such contracts because it would be inequitable to permit the surviving spouse, their heirs or devisees, to assert marital rights thereafter. 13 R. C. L. 1373, sec. 419; 30 C. J. 670; *In re Estate of Lauderback,* 106 Neb. 461, 184 N. W. 128; *Marty v. Marty,* 111 Kan. 120, 206 Pac. 324; *Keller v. Keller,* 121 Kan. 520, 247 Pac. 433, 49 A. L. R. 113; *Eberhart v. Rath,* 89 Kan. 329, 131 Pac. 604; *Kohler v. Kohler,* 316 Ill. 33, 146 N. E. 476; *Fennell's Estate,* 207 Pa. St. 309, 56 Atl. 875.

We conclude that a married woman who has made a valid postnuptial agreement with her husband while both are residents of California, which is equitable and free from fraud, and they lived together as husband and wife for many years thereafter without rescinding, repudiating or questioning the agreement, but recognized and ratified the same by later making deeds and wills in harmony therewith, and the same was fully performed, and both parties died, and their wills were both admitted to probate, the husband having died first, the wife before her death is estopped to renounce the husband's will and elect to take under the law of inheritance in Nebraska, and her devisee is estopped to claim the invalidity of the postnuptial agreement. Equity will not countenance the repudiation of this

solemn postnuptial agreement. The widow being deprived of the right to elect, we will not discuss the contentions of the parties with reference to the legal effectuality thereof.

The findings and judgments of the district court in both cases were right, and its judgments are

AFFIRMED.