SOPHIA COON, Plaintiff, *v.* THOMAS H. CAMPBELL, Defendant.

Supreme Court, Onondaga County, March 24, 1930.

*Welch & Welch*, for the plaintiff.

*James G. Tracy*, for the defendant.

Ross, Official Referee. On August 6, 1924, Thomas Coon (since deceased) executed a deed (of the premises, the subject of this action) to Thomas Coon and Sophia Coon, his wife (the plaintiff), " as tenants by the entirety."

After the death of Mr. Coon, and on May 18, 1929, the plaintiff and defendant entered into a contract for the sale and purchase of the premises in suit by the terms of which the plaintiff agreed to furnish an abstract of title showing " a good and marketable title."

The transfer was to be completed on or before August 1, 1929, which time was extended to October twenty-fourth. The questions herein presented are: " Did the plaintiff furnish a marketable title, and did the defendant waive a strict performance as to outstanding inheritance taxes? "

The deed from Thomas Coon to himself and Sophia Coon, his wife, " as tenants by the entirety," created an estate by the entirety, and, upon the death of Thomas Coon, the entire estate vested in his wife, the plaintiff.

*Matter of Klatzl* (216 N. Y. 83). The question decided was that upon the death of the husband, his one-half interest became subject to a transfer tax. Three judges held that the husband and wife became tenants in common. Three judges held that the deed created an estate by the entirety, that the intervention of a third party is no longer necessary, and that the property was not subject to a transfer tax.

Chief Judge WILLARD BARTLETT held that the wife took by virtue of the deed an estate by the entirety, but that the property conveyed was subject to a transfer tax to the extent of one-half its value.

On page 88 of 216 New York, Judge WILLARD BARTLETT uses the following language: " The creation of such an estate is permitted by law and I see no reason why the husband could not convey to his wife such an estate as she would get by a similar deed to them from a third person, and at the same time reserve for himself the same rights he would have under such a deed."

On page 93 of 216 New York, Judge COLLIN (dissenting) wrote: " The old formality was necessary when the wife had no legal existence apart from her husband, who in contracting with her simply contracted with himself according to the theory of the law. That

theory has been overthrown by statute and the opposite theory substituted, so that there is no longer any necessity for a trustee."

This case was cited by Judge W. S. ANDREWS in *Matter of Lyon* (233 N. Y. 208, on p. 211).

In the case of *Armondi* v. *Dunham* (221 App. Div. 679; affd., 248 N. Y. 603) it was held that if the relationship of husband and wife in fact existed, a conveyance to them without descriptive words defining the relationship is sufficient to and in fact does create an estate vested in both by the entirety. This position is maintained in an able opinion by Mr. Justice DAVIS, and the case was affirmed by the Court of Appeals (248 N. Y. 803).

The precise case at bar was decided by Mr. Justice MILLER, formerly surrogate of Oswego county, in *Matter of Vogelsang* (122 Misc. 599), and also in a decision by Mr. Justice HINKLEY in *Boehringer* v. *Schmid* (133 id. 236).

It seems to me that the drift of present legislation is towards the elimination of the archaic; that the present day decisions of the courts are in accord with this spirit, to use and interpret language in accordance with the understanding of the average man with the view to clarify rather than to obscure. This is especially true, in view of the changed legal relations during the last hundred years between husband and wife.

The instant case is typical of the application of archaic law to present time conditions. Here was the husband, owner of the fee and premises in suit, confronted with the certainty of survivorship of either himself or his wife and desirous of bestowing the estate upon either his wife or retaining it himself, and directly and simply he expressed such a purpose, and now the widow stands outside the house (it appears that the house is vacant and has never been occupied by the widow) which the husband had the right to bestow upon her, and waits for the courts to slowly unroll the record of the conceded facts and to determine whether the deceased husband meant what the language apparently means. In other words, whether the language shall be construed as though uttered in the twentieth century or the eighteenth.

Except for the fact of waiver, the plaintiff did not have a marketable title on August 24, 1929, by reason of the outstanding inheritance taxes. (*Smith* v. *Browning*, 225 N. Y. 358.) Judge HOGAN points out (225 N. Y. 367) what steps the vendor can take to cure the defect, but, in the view I take of the case, this objection was waived.

In the preliminary talks between the representatives of the contending parties herein — Mr. Walter Welch, for Mrs. Coon, and Patrick J. Tierney, for Mr. Campbell — the principal, in fact

the only, difficulty discussed was whether Mrs. Coon had as surviding tenant a good title under the deed of August 6, 1925. (See evidence of Mr. Walter Welch, beginning S. M. p. 23, and continuing on p. 26.) He said (p. 26): "The only objections he had to the title was the question of whether this deed from Thomas Coon to Thomas Coon and the plaintiff created the sole title in Mrs. Coon so that she owned all of it and he said that was the only question in it."

And again (on p. 33): "Mr. Tierney said that the case ought to be settled, and that is the only objection that he had to the title."

And again: "I talked with him [Mr. Tierney] about the insurance, taxes and interest, and he said that there could be no question but that all taxes should be deducted from the purchase price."

And again: "That all taxes could be deducted from the purchase price. That there could be no question about that. The only question was on account of that deed, and that was the only objection that he had to the title, the conveyance."

Mr. Tierney, upon the stand as a witness for the defendant (pp. 66 and 67) said: "I asked him [Mr. Walter Welch, Jr.] if the collateral inheritance tax on Mr. Coon's estate had been paid. He said he did not know as he was not the attorney for the estate, but would find out, and I told him I would have to insist upon that being paid by the time the deal was closed."

And again (on p. 67): "Q. After your conversation with Mr. Welch, Jr., with reference to the transfer tax, did you ever have any further conversation with either of the Welches or with the plaintiff in reference to closing the deal? A. I think that is all I said about the collateral inheritance tax. Q. And the other ground of objection was the ground of title we have talked about? A. Yes."

The foregoing evidence of Mr. Tierney is far from being a denial of Mr. Walter Welch's evidence. It rather corroborates the claim that little or no emphasis was put upon the matter of taxes. In point of fact, it appears that the order fixing the amount of taxes was entered in Surrogate's Court, December 31, 1929, and the receipt showing full payment of all taxes on the estate was filed in Surrogate's Court, January 8, 1930. (P. 48.)

It would be manifestly unfair to allow an objection which was merely an afterthought to deprive the plaintiff of her rights under the contract of sale. The defendant cannot now in good conscience urge an objection which, had it been urged, could have been remedied.

The evidence of Walter Welch, Jr., as to conversations with Mr.

Tierney, attorney for Mr. Campbell, in which it was in substance agreed that the plaintiff should have additional time to pay the taxes, was not an attempt to vary or alter the contract, but was evidence of acts which showed a waiver of strict performance.

Mr. Campbell had the legal right to waive every and any condition of the agreement, and certainly he had the right to extend the time of payment of the taxes, especially as he placed his objections to the title upon other grounds, and the matter of the taxes was apparently not emphasized by Mr. Campbell's attorney.

A waiver takes place where a man dispenses with the performance of something which he has a right to exact. (40 Cyc. 254; *Toplitz* v. *Bauer*, 161 N. Y. 325.) This was an action to recover for the conversion of a policy of life insurance. On the question of waiver, Judge O'BRIEN (161 N. Y. 332) writes: " In recent times the right of the parties to enter into a contract providing for a sale or disposition, without notice has been recognized. * * * The pledgee doubtless has the right to exact strict performance of the contract according to its terms, and, upon default in the payment of the debt at the time stipulated, he may, under a contract like this, dispose of the pledge. But if he waives the right to exact strict performance, and gives time and indulgence to the debtor, he cannot recall this waiver at his own option, without notice to the pledgor, to the end that the latter may have an opportunity of protecting the pledge. * * * Strict performance in such cases may be waived by any agreement, declaration, or course of conduct on the part of the pledgee which leads the owner to believe that a forfeiture will not be insisted upon without an opportunity given him to redeem."

*Imperator Realty Co.* v. *Tull* (228 N. Y. 447, on p. 452), Judge CHASE writing, cites the case of *Thomson* v. *Poor* (147 id. 402, 409): " ' We know of no principle of law which will permit a party to a contract, who is entitled to demand the performance by the other party of some act within a specified time and who has consented to the postponement of the performance to a time subsequent to that fixed by the contract, and where the other party has acted upon such consent and in reliance thereon has permitted the contract time to pass without performance, to subsequently recall such consent and treat the non-performance within the original time as a breach of the contract. The original contract is not changed by such waiver, but it stands as an answer to the other party who seeks to recover damages for non-performance induced by an unrecalled consent.' " (Quoting from *Thomson* v. *Poor*, 147 N. Y. 402, 409.)

The learned judge also cites the case of *Arnot* v. *Union Salt Co.* (186 N. Y. 501), in which it was held that, where the time of payment under contract had been extended by parol, and the party required to make the payment had acted upon such extension, the party waiving such time of payment cannot consider the debtor in default unless he withdraws the waiver before the time of payment has arrived.

The learned judge continues on page 453 of 228 New York: " The defendant by his mutual oral contract with the plaintiff is estopped from now claiming that the plaintiff who relied thereon was in default on the due day of the written contract because of its omission to then have the property free of the violations. He should not be allowed to take advantage of an omission induced by his unrevoked consent." And cites in addition to the cases mentioned before *Swain* v. *Seamens* (76 U. S. [9 Wall.] 254) and *Brede* v. *Rosedale Terrace Co.* (216 N. Y. 246).

The conditions said to have been imposed by the bank as a condition of making a loan upon the premises has nothing whatever to do with this case. That is a matter solely between the bank and Mrs. Coon. It could have declined to make the loan without in any way impairing Mrs. Coon's rights against Mr. Campbell.

The plaintiff is entitled to recover for the relief sought, together with costs. Findings to be submitted.