ELIZABETH MCKULSKY STUEHM ET AL., APPELLEES, V. LILLIAN DANFORD MIKULSKI, APPELLANT.

297 N. W. 595

FILED APRIL 18, 1941. No. 30798.

' *O'Sullivan & Southard* and *Joseph E. Strawn*, for appellant.

*Ritchie, Swenson & Welpton* and *Bernard E. Vinardi*, contra.

*Edwin Vail, Frank D. Williams, R. O. Williams, Lewis R. Ricketts, Perry W. Morton* and *H. J. Whitmore, amici curiæ.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ., and TEWELL, District Judge.

TEWELL, District Judge.

Nine children of George Mikulski, Sr., deceased, brought this action in equity in the district court for Sarpy county against Lillian Danford Mikulski, widow of said George Mikulski, Sr., to set aside a deed executed by said George Mikulski, Sr., to himself and said defendant. This deed, dated March 7, 1938, and recorded the second day thereafter, purports to convey the south half of the southeast quarter of section 6 and the north half of the northeast quarter of section 7, all in township 13 north, range 13 east of the 6th P. M., in Sarpy county, Nebraska, to George

Mikulski, Sr., and the defendant, Lillian Danford Mikulski, husband and wife, "as joint tenants, and not as tenants in common." Among the reasons assigned for cancelation of this deed by the plaintiffs in their petition are that such deed was procured by undue influence exercised by the defendant upon said George Mikulski, Sr., and that such deed, even if not procured by undue influence, failed to convey any title to the grantees therein on account of its form and substance. The trial court found and decreed that the deed was not procured by undue influence, and that its legal effect was to convey to each of the two grantees an undivided one-half interest in fee as tenants in common with no right of survivorship. The defendant has perfected an appeal to this court and the plaintiffs have perfected a cross-appeal.

Several members of the bar have filed briefs *amici curiæ* solely upon the question of what estate, if any, the deed involved would create in the grantees. The form of this deed, when executed without consideration and without reference to, and not for the purpose of carrying out, any contract that specified the characteristics of the estate intended to be created, raises a question new to this jurisdiction. Its decision is appropriate.

Long prior to the execution of this deed and at the time of its execution, George Mikulski, Sr., was the sole owner of the fee title to the land involved. The sole grantors in the deed as well as the sole grantees were the fee owner and his wife. Both the conveying clause and the habendum clause recite that the land is conveyed to the grantees as joint tenants and not as tenants in common. Furthermore, the deed recites, in effect, that it is the intent of the parties that in the event of the death of one grantee the other shall become invested with the fee simple title. That the parties to the deed intended to create a joint tenancy with right of survivorship as such estate was known at common law cannot logically be questioned. Is a deed of such a character capable of conveying an estate in joint tenancy with right of survivorship as such estate existed at common law is the question involved.

A solution of this question involves a consideration of the exact nature of such an estate. An attempt to define such an estate by the words of one sentence would be of little aid to an understanding of its nature. To detail some of the factors that must exist while such an estate exists will be of more aid. The law books seem to define such an estate as hereafter stated. Such an estate must be created in two or more persons at the same time by the same conveyance, and the holders of such an estate must be given an equal and like interest therein and be given equal and like right to possession of the corpus of the estate. That there must be a unity of possession, a unity of interest, a unity of time and a unity of title in the holders of such an estate in order for it to exist is one statement that is often used in law books to express its nature. Any act which divests the interest of a portion of the holders of their estate during their lifetime, such as a conveyance by such portion, or a sale of the interest of such portion under execution, operates as, what in the law is called, a severance of the estate of such portion. The four unities heretofore listed must not only come into being with the creation of such an estate, but must also continue to exist while the estate exists, and the destruction of any one of them as to all holders will destroy the estate, even though all holders still live. For cases dealing generally with the nature of a joint tenancy, see 33 C. J. 904; *Fleming v. Fleming,* 194 Ia. 71, 174 N. W. 946; *Staples v. Berry,* 110 Me. 32, 85 Atl. 303; 2 Blackstone, 180; 1 Tiffany, Real Property (2d ed.) 625.

In line with statements made in the above discussion of the nature of an estate in joint tenancy as known at common law with right of survivorship, it has been held that one of the owners of such an estate may acquire the interest of the others by adverse possession (*Smith v. Hogg,* 195 Ky. 265, 242 S. W. 354); that upon the death of one of two cotenants holding such an estate, the survivor takes the entire fee free from the debts of the deceased cotenant (*Wood v. Logue,* 167 Ia. 436, 149 N. W. 613, Ann. Cas. 1917B, 116). We do not intend that any statement

made in the above discussion of the nature of such an estate shall be a holding that any one statement therein contained is the law of this state. Such discussion is merely for the purpose of considering the nature of the estate under discussion, as such estate was known at common law.

It will be remembered that this court has held that estates in joint tenancy as they existed at common law have not been abrogated by statute in this state. *Sanderson v. Everson*, 93 Neb. 606, 141 N. W. 1025. Under the common law, one could not convey real estate to himself. No statute of this state has changed such rule. In the absence of legislative enactment, we are not ready to say, even in order to appear "modernistic," that one holding a fee title as an individual in real estate may effectively, and without the intervention of others, convey such real estate to himself as an individual with restrictions upon his right of alienation, or so as to change the nature of his estate. In order for an estate in joint tenancy as known at common law with right of survivorship to have been created by the deed involved in this case, George Mikulski, Sr., either had to convey to himself, and also in so doing to change the nature of his estate, or such estate must have come into being without the required unity of time or title. The defendant urges that the common-law rule that prevented one holding real estate in fee from conveying to himself and another and creating a joint tenancy is archaic, and that the reason for its existence has ceased to exist. To preserve the nature of various estates that the law allows to exist could not be archaic. To support this contention the defendant cites the following cases: *Currier v. Teske*, 84 Neb. 60, 120 N. W. 1015, and cases therein cited on the point under discussion. In each of these cases the question of the validity of a deed of land in fee direct from a husband to his wife without the intervention of a trustee was involved. Such a deed may convey a valid fee title, although it could not at common law, for the reason that the wife was restricted in her power of contract, and was re-

garded as one and the same person as her husband. The married woman's act enlarged the rights of the wife and use of the trustee was no longer necessary. These cases do not support the defendant's contention. The defendant cites the case of *Neneman v. Rickley*, 110 Neb. 446, 194 N. W. 447. In that case a right of survivorship was held to have been created by specific contract, but a joint tenancy as known at common law was not created. The property was subject to the debts of the deceased cotenant. The case is not in point. In this case, to preserve the four unities necessary in an estate in joint tenancy must defeat intent. To preserve those unities is the duty of the court. Courts should not create new kinds of estates, heretofore unknown. If any one of these four unities is to be declared unnecessary in certain cases, the enumeration of such "certain cases" and the scope and breadth of such enumeration must be by legislative act. Too many and varied are the acts of one common-law joint tenant that, under the law, may constitute a severance, and destroy the joint tenancy during the lifetime of all joint tenants, on account of the destruction of one or more of these four unities, to make it allowable for a court to say, without legislative enactment, that a joint tenancy as known at common law may exist, in certain cases, in the absence of one or more of these four unities. In this case it is well to remember that there is nothing in the deed involved, nor in any act out of which it arose, from which it may be said that the parties intended that the joint tenancy should be other than joint tenancy as known at common law with all the attributes and incidents inherent therein.

The defendant urges that to declare that the deed involved did not create a joint tenancy would defeat many hundreds of such deeds now of record in the various counties of Nebraska, and says in her brief that an investigation has disclosed that 55 such deeds have been placed on record in Dodge county since the decision in *Neneman v. Rickley, supra*. As heretofore pointed out, that case did not hold that the facts involved created a joint tenancy.

The question presented by the form of the deed involved is now before this court for the first time. No doctrine of *stare decisis* is involved. The rule herein announced will cause far more certainty in real estate titles containing conveyances that purport to creat a joint tenancy, than would a rule that allowed a court to say that in "certain cases" a joint tenancy may exist in the absence of one of the four required unities. Under such a rule an examiner of such titles would wonder whether the facts presented to him was one of those "certain cases," and send his client to court to find out.

We hold that the deed in controversy was not capable of creating a joint tenancy as known at common law with right of survivorship in George Mikulski, Sr., and the defendant. In that view we are supported by the following authorities: *Deslauriers v. Senesac,* 331 Ill. 437, 163 N. E. 327; *Breitenbach v. Schoen,* 183 Wis. 589, 198 N. W. 622; *Pegg v. Pegg,* 165 Mich. 228, 130 N. W. 617. As supporting an opposite view the defendant cites among others the following cases: *Colson v. Baker,* 42 Misc. 407, 87 N. Y. Supp. 238; *Saxon v. Saxon,* 46 Misc. 202, 93 N. Y. Supp. 191; *Lawton v. Lawton,* 48 R. I. 134, 136 Atl. 241; *Ames v. Chandler,* 265 Mass. 428, 164 N. E. 616; *Dutton v. Buckley,* 116 Or. 661, 242 Pac. 626; *Coon v. Campbell,* 138 Misc. 567, 240 N. Y. Supp. 772; and *Boehringer v. Schmid,* 254 N. Y. 355, 173 N. E. 220. In some of these cases a statute had changed the common-law rule, and others are not in point or their logic untenable.

The defendant urges that section 76-109, Comp. St. 1929, is controlling. This section, commonly referred to as "the intent statute," reads as follows: "In the construction of every instrument creating or conveying, or authorizing or requiring the creation or conveyance of any real estate, or interest therein, it shall be the duty of the courts of justice to carry into effect the true interest (intent) of the parties, so far as such intent can be collected, from the whole instrument, and so far as such intent is consistent with the rules of law." This statute has been a prolific

parent of errors, and at the same time has perhaps greatly encouraged and hastened the use of proper rules of construction of written instruments of conveyance that courts should have, and belatedly would have, adopted without its existence. This statute seems first to have appeared in Nebraska as one of the acts of the second territorial legislature in 1856 and to have been an exact copy of a section of the property code of New York in 1828, and upon casual search does not appear ever to have been amended. An interesting and helpful article upon this section by Dean Foster of University of Nebraska College of Law will be found in volume 8, Nebraska Law Bulletin, p. 148. If it were repealed today, it is very difficult, if not impossible, to conceive how either rules of construction or of substantive law would be in any manner changed. It does not stop with the word "parties" contained therein, nor does it purport to amend or in any manner modify any rule of substantive law existing or created in the future, as it has been many times erroneously assumed to have done. Its causing this false assumption is the secret of its powers as a parent of errors. Examples of such errors are found in the following cases: *Albin v. Parmele*, 70 Neb. 740, 98 N. W. 29; *Moran v. Moran*, 101 Neb. 386, 390, 163 N. W. 315, 1071. Following the word "parties" in this statute occur the words "so far as such intent can be collected from the whole instrument." This clause admonishes the courts to consider the entire instrument, and not allow, for example, a direct and unqualified conveyance in the clause of conveyance and habendum clause to nullify superadded words that would, if given effect, create a legal limitation upon the clause of conveyance. This clause is still a rule of construction. The last, too often unnoticed, clause is *"and so far as such intent is consistent with the rules of law."* (Italics ours.) It has long been recognized that public policy demands that certain limits, such as the rule against perpetuities, the rule against certain restraints on alienation, be placed upon freedom in the conveyance of real estate, however clear the intent of the one making such

conveyance may be. To enforce any of these legal restraints, the intent of the one making the conveyance must necessarily be defeated. To enforce the rule in Shelley's Case, which, perhaps, the legislature should abolish, must defeat intent.

Regardless of any previous expressions of this court concerning this intent statute that may be considered at variance with the interpretation thereof as herein given, we adopt the interpretation above stated as the correct meaning of such statute so far as such interpretation extends.

By their cross-appeal the plaintiffs raise the question whether the deed involved conveyed any interest in the property because of the exercise of undue influence in its procurement. To answer this question involves a consideration of all the evidence. George Mikulski, Sr., was married to Mary Schram in February, 1905, and to this union were born the nine children, who are the plaintiffs. On August 14, 1934, this first wife, who is hereinafter referred to as Mary Schram, died intestate. On June 1, 1935, the defendant, then named Lillian Danford, and theretofore unknown by any of the plaintiffs or their father, was employed as a housekeeper by said father. At the time of such employment George Mikulski, Sr., was living upon the farm involved, with four of his sons, all of whom were unmarried, and three of whom were minors. Prior to such employment and after the death of Mary Schram, the said father and his sons had employed a lady as a housekeeper a portion of the time, and for a portion of such time had "batched." By about the middle of July, 1935, or about six weeks after the defendant first met George Mikulski, Sr., he and the defendant were engaged to be married. They were married on August 23, 1935. In September, 1935, George Mikulski, Sr., and his second wife were negotiating for a sale of all land involved with a view to moving to California. An action in equity was thereupon brought by a portion of the plaintiffs against George Mikulski, Sr., and the defendant for the purpose of establishing a trust in their favor for what they alleged was their share of money advanced

to George Mikulski, Sr., by their mother, Mary Schram, from money inherited by her from the estate of one of her parents. Such money is shown to have been upwards of $13,000 in amount. About $9,000 of it was used by George Mikulski, Sr., to pay mortgages upon the farm involved. About the time such action for the establishment of such trust was begun, a proceeding was started in the county court of Sarpy county to secure the appointment of John Mikulski, one of the adult plaintiffs herein, as guardian for his three minor brothers, the youngest of whom was then about 14 years of age. Such an appointment as guardian was made on October 26, 1935. In the proceedings to probate the estate of Mary Schram, of which George Mikulski, Sr., was administrator, pleadings were filed by a portion of the plaintiffs to secure an accounting by the administrator. About April 15, 1936, a settlement, expressed by written agreement, was reached between George Mikulski, Sr., and all his children, by which $5,750 was paid to the children in full settlement of the action to establish a trust and of said proceedings for an accounting as administrator, and by which all interest of the children in the estate of their mother was assigned to their father. About May 14, 1936, George Mikulski, Sr., executed a will by which he gave each of his children $1, provided for the payment of his debts, and gave all the rest and residue of his estate to the defendant. In October, 1937, George Mikulski, Sr., became ill, a portion of the cause of which was diagnosed as cancer of the stomach. The defendant was then informed of the existence of such cancer. On March 7, 1938, when George Mikulski, Sr., was quite ill, the deed in controversy was executed. On March 17, 1938, he was taken to a hospital, and on April 3, 1938, was taken back to his home. On May 6, 1938, George Mikulski, Sr., died.

The facts above stated form only the skeleton of the tragedy reflected in the record. The bill of exceptions consists of 1,153 pages, each of which has been carefully read. To outline the evidence with greater detail than is herein done would serve no useful purpose. In addition to the

skeleton of the facts above stated we mention a few of the salient conclusions that may be fairly deducted from the evidence. The deed in controversy recited a consideration of $1 and the record does not disclose any agreement by the defendant to pay anything for such deed. At the time of the defendant's marriage to George Mikulski, Sr., she was about 47 years of age, he about 67 years of age. Prior to the defendant's coming to the Mikulski home as housekeeper on June 2, 1935, no ill feeling had ever existed between George Mikulski, Sr., and any one or more of his children. Some of the older children had graduated from high school. The youngest child, then about 14 years of age, had been sent to high school as a freshman the preceding winter, and application was made in June, 1935, to send him to high school the following winter. All of the four daughters were married and living in homes of their own. Four of the sons were not married and were living with their father. The oldest of these four, George, Jr., had farmed the land involved under lease from his father for the year 1935. Within about six weeks after the defendant's arrival as a stranger she was engaged to be married to her employer, and shortly after such engagement began to refuse to wash the shirts and underclothing of the boys, to refuse to make their beds, and to object to a neighbor boy eating at the Mikulski home. This boy had played and eaten at the Mikulski home quite often for years. In all of this she was upheld by her employer. During August, 1935, a portion, at least, of the boys decided that Miss Danford should be discharged, and they told her to pack her belongings and they would take her to town. She replied "Oh Yeah," and went into her room. They supposed she was preparing to leave. Instead she left the house through a window and a short time later entered the farm yard in a car driven by George Mikulski, Sr. That same day complaint was made to the county attorney by the defendant and her employer in an effort to obtain the arrest of the boys. A few days after this incident most of the plaintiffs gathered at the Mikulski home in an effort to

talk matters over with their father. The defendant attended the conference, although asked by the children to let them talk with their father alone. During this conference the father informed the children that they had nothing coming from their mother's estate, and that all money had been spent. The conference ended by George Mikulski, Sr., leaving the room with the defendant at her request. A few days after this conference the marriage of the defendant and the father occurred. No objection to this marriage is shown to have been voiced by the children or any of them. The boys continued to reside at their father's home for a few weeks. Through some source the father was made to believe that the boys, or some of them, arranged to have a poisonous water moccasin placed in the house. Some cream merely foamed, and could not be made to produce butter, when churned. Through some source the father was made to believe that poison had been placed in this cream, and that Frank, the youngest boy, had been seen about the premises just prior to this incident. The boys left their father's home in early September, 1935, the youngest going to live with his sister in Kansas City, as no arrangements to send him to school had been mentioned by the father.

At the time of the execution of the deed involved on March 7, 1938, the father gave instructions for drawing a will, and also for drawing a lease to the farm. Such a will was drawn and executed about March 8, or 9, 1938. It was of the same general nature as was the will of May 14, 1936, above mentioned, with the exception that it provided for $100 to be paid to one Father O'Hearn for masses. About this time George Mikulski, Sr., gave directions for the preparation of written directions to an undertaker as to his funeral and place of burial. He directed burial in a cemetery other than, but near, the cemetery wherein his first wife and his father and mother were buried. He had several times expressed a wish not to be buried in the same cemetery as was Mary Schram.

The record clearly supports a finding to the effect that the defendant knew of the execution of each and all of the

instruments above mentioned, and was active in making arrangements for the preparation of the two wills mentioned above and of the deed in controversy. She was present at the execution of most of them. It is worthy of note that none of the children ever had heard of the poisonous snake incident or of the cream incident above mentioned until the trial of a contest of the validity of the second will above mentioned after the death of their father. One of the attorneys for George Mikulski, Sr., in the negotiations to bring about the written settlement whereby the children assigned their interest in their mother's estate, which has been mentioned above, and who testified as a witness for the defendant in this case, admitted, in effect, in his testimony, that the attorneys involved had much more difficulty in obtaining concessions from George Mikulski, Sr., in negotiations for such settlement when the defendant was present than when she was absent. In a trial in the county court the defendant admitted she had never done anything in an effort to bring about more amiable relations between the children and their father, and when asked as to whether she would have allowed the minor boys to move back to her home, said "Why should I?"

That undue influence upon a grantor in a deed is a subtle thing, that it is usually exercised in secret, and that it is not usually susceptible of direct proof; and that it may be shown by circumstantial evidence alone are statements, the truth of which need not be substantiated by citation of authorities. It is useless to attempt to classify the various influences, even by groups, that may constitute undue influence. Its existence, arising usually from deceit or fraud, is established when it is clearly shown that the opportunity to exercise it existed, that an attempt to exercise it was designedly made, and that its effect upon its victim was such as to cause his act to be the result of such influence, and not to flow from the exercise of his free and deliberate will. *Gidley v. Gidley,* 130 Neb. 419, 265 N. W. 245. Hundreds of circumstances other than those mentioned above are shown in the evidence. That the affections of

George Mikulski, Sr., for his children were completely alienated between the coming of Miss Danford as a stranger on June 2, 1935, and before any legal proceedings were begun by any of the children in September, 1935, is worthy of note. Many stories, quite apparently false, derogatory of some one or more of the children, had been told to George Mikulski, Sr., by the defendant, if one is to judge from declarations shown to have been made by him prior to his death. We conclude from the record that the deed involved herein should be canceled on account of having been obtained through undue influence.

For reasons above stated, the decree of the trial court is reversed and the cause remanded, with instructions to enter a decree canceling and holding for naught the deed involved in this suit. Costs in this court are taxed to the defendant, Lillian Danford Mikulski.

REVERSED.

SIMMONS, C. J., dissenting.

The majority reach the conclusion that the deed in question, having been obtained through the use of undue influence, should be canceled and held for naught. In that conclusion I concur.

The majority opinion, however, before reaching the above conclusion, holds that the deed did not create a joint tenancy estate with right of survivorship. To that conclusion I dissent.

I shall disregard the question of undue influence and limit this discussion to that part of the majority opinion dealing with the creation of estates in joint tenancy. I submit that, if the deed is void because of undue influence, that disposes of the case, for if it is void, it is void, no matter what its effect may have been, if valid. Accordingly, that part of the majority opinion dealing with the question of how estates in joint tenancy may be created is dictum, and does not constitute a controlling precedent.

This type of deed and method of conveyance direct from one person to himself and another are in common use in the state. The presentation of this question to the court

has created doubt in the minds of the profession as to the validity and effect of titles held under such conveyance. The majority deem it advisable to determine the question, and accordingly the presentation of the views of a minority of the court becomes proper. However, if the court is to decide, as it purports to do, that the deed in question does not create a joint tenancy estate, then the profession is entitled to an expression of the opinion of the judges as to what estate is created by the deed. Certain it is that the majority hold the instrument created some sort of an estate in the grantee wife, or grantees, husband and wife, for, were it otherwise, there would be no necessity for holding that the deed should be canceled and held for naught. The present expression of opinion can have no effect but to add to the confusion and doubt already existing. If this instrument does not create a joint tenancy estate, what does it create? Are the grantees tenants in common or does the grantee wife take the entire estate? Having entered this field, the question should be answered as to what the effect of this instrument is, and the question is not answered by saying what it is not.

The granting clause of the deed in question describes the grantees "as joint tenants, and not as tenants in common." Following a description of the property is this sentence: "It being the intention of all parties hereto, that in the event of the death of either of said grantees, the entire fee simple title to the real estate described herein shall vest in the surviving grantee." The habendum clause again refers to the grantees "as joint tenants, and not as tenants in common." The warranty of title goes to the grantees and "the heirs and assigns of the survivor of them."

The majority opinion throughout assumes that the parties intended to create, and holds that they did not create, a joint tenancy "as such estate was known at common law." I find nothing in the instrument that justifies that assumption. It would be more reasonable to assume that the parties intended to create a joint tenancy estate as defined by the decisions of this court under our statutes and by the use of methods which this court has approved.

The majority opinion holds that the owner of an estate in fee may not convey directly to himself and another so as to create in himself and such other an estate in joint tenancy, but that such estate may be so created with the intervention of a trustee. In other words, that it is entirely proper and legal to do indirectly that which the "rules of law" prohibit doing directly. This court, however, has said that, "The law will not permit that to be done indirectly which cannot be done directly." *Fall v. Fall*, 75 Neb. 120, 132, 113 N. W. 175, 180.

The majority opinion apparently attempts to limit the announced rule to such a deed, "when executed without consideration and without reference to, and not for the purpose of carrying out, any contract that specified the characteristics of the estate intended to be created." This limitation is for the apparent purpose of avoiding the controlling effect of the decision of this court in *Neneman v. Rickley*, 110 Neb. 446, 194 N. W. 447.

What was the holding in the *Neneman* case? What was the instrument there construed and held valid and enforceable? "The antenuptial agreement and conveyance" (so described by this court) provided:

"3. That each of these parties hereby grants, bargains, sells and conveys to the other an undivided one-half (½) interest in all the property, real or personal, which he or she now owns for the purpose and with the intent of vesting in both parties the joint ownership of all property at this date owned in severalty by either of them.

"4. In case of the death of one of these parties, all of said property shall, subject to the claims of creditors, vest absolutely in the survivor." This court said: "The third paragraph constitutes and is a valid conveyance of an undivided one-half of the property of each to the other." And that, "In the absence of fraud, or mistake, such a conveyance is valid." By what process did the survivor become entitled to the whole estate? This court said: "Both the present estate and the right of the survivor to take passed upon the execution of the contract. The contract

required nothing further to be done by either party. It was executed with all the formalities of a deed of conveyance, and was such in fact. It was not an executory but an executed contract, and required no trustee to carry it into effect."

There is no distinction to be made between a conveyance between a husband and wife and parties not husband and wife, as in the *Neneman* case. A conveyance from a husband to a wife is valid without the intervention of a trustee. *Currier v. Teske,* 84 Neb. 60, 120 N. W. 1015. In reaching that conclusion this court disregarded the "verbal husks of the old rule" and acted "in accordance with the modern tendency to disregard the fictions and technical niceties and distinctions of the common law."

Neither is a distinction to be made because the Neneman instrument was antenuptial and the present conveyance was postnuptial. For this court has said that postnuptial contracts are valid and may operate as a conveyance of real estate in Nebraska. *Jorgensen v. Crandell,* 134 Neb. 33, 277 N. W. 785.

The majority opinion disposes of the *Neneman* case by stating that there a "right of survivorship was held to have been created by specific contract, but a joint tenancy as known at common law was not created," and that, "The property was subject to the debts of the deceased cotenant." That decision cannot be so cast aside.

This court held in the *Neneman* case that the "specific contract," so referred to in the majority opinion, was in fact a deed of conveyance when executed, and that no trustee was necessary to carry it into effect. The distinction made by the majority between the *Neneman* case and the instant case that one was based on contract and the other on a deed is therefore eliminated.

But one difference remains. In the *Neneman* case the property was to be held by the survivor "subject to the claims of creditors;" in the instant case it was not to be so held. To that extent, then, the "deed of conveyance" in the *Neneman* case may not have been a strict common-law

joint tenancy. See 33 C. J. 903, and 14 Am. Jur. 79, sec. 6. But what did this court say about that? "It is next said that the contract did not create a joint tenancy, which would vest the estate in the survivor. Whether it created a joint tenancy or not is immaterial. We see no reason why, upon the death of one party, the property may not vest absolutely in the survivor, subject to the claims of creditors, as the contract provides. This was evidently the intent of the parties, which section 5594, Comp. St. 1922 (now sec. 76-109, Comp. St. 1929), makes it the duty of the court to carry into effect."

Is it not "the duty of the court to carry into effect" the intent in the instant case as it was the duty of the court to carry the intent into effect in the *Neneman* case? I think so.

Is the fact that the property in the instant case is not "subject to the debts of the deceased cotenant" a reason why the property may not vest absolutely in the survivor as the deed provides and the parties intended? I do not think so. "The distinct characteristic of a joint tenancy is that, upon the death of one of the joint tenants, there being no severance, his interest descends to the survivor or survivors, and at length to the last survivor. Therefore, whenever a joint tenancy exists, whether at common law or under the statutes, on the death of one of the joint tenants and in the absence of statute otherwise, the survivors take the whole estate, free from any charges on the property made by the deceased cotenant." 33 C. J. 903. See 14 Am. Jur. 79, sec. 6.

Does this holding of the majority mean that, if, in the instant case, the property had been conveyed by Mr. Mikulski to himself and wife pursuant to a contract and subject to the debts of the parties, the conveyance would have been valid and would have created an estate with right of survivorship? Apparently so! But if a specific contract and liability for debts are the controlling elements, then what becomes of the "four unities" which the majority hold are necessary in order to create an estate in joint tenancy?

Must not those four unities exist where an estate is created with right of survivorship by specific contract subject to debts as well as where an estate with right of survivorship is created by deed not subject to debts? A specific contract to make the conveyance is not one of the four unities. Whether or not the property is to be subject to debts of the deceased cotenant is not one of the four unities. It is a result of the conveyance that can only arise when and if the conveyance is valid to create the estate with right of survivorship.

I concur with the majority that it is entirely legal and proper to create an estate by contract with right of survivorship and subject to debts of the deceased cotenant without the intervention of a trustee, but I do not concur that it is entirely illegal and improper, without the intervention of a trustee, to create such an estate by deed with right of survivorship, free from the debts of the deceased cotenant.

The majority opinion holds that "rules of law," to wit, the "four unities," prevent that being done. Those four unities did not prevent it from being done in the *Neneman* case. They are not mentioned in the *Neneman* opinion. However, an examination of the brief of the appellant in that case discloses that he urged upon this court that "no joint tenancy is created vesting the estate in the survivor" and cited the "four unities" rule in support of that proposition. So this court in the *Neneman* case had before it, and rejected, the identical proposition which it now accepts.

In *In re Estate of Johnson*, 116 Neb. 686, 218 N. W. 739, a husband made deposits in a bank and certificates of deposit were issued payable to himself and wife, in varying language, indicating a joint ownership with right of survivorship. This court held that "an interest in the nature of a joint tenancy with the attendant right of survivorship" was created. If a person can so create "an interest in the nature of a joint tenancy" in personality which will pass title to his wife, why can he not do so in realty? Obviously the "four unities" were not observed in the *Johnson* case.

In the *Johnson* case this court quoted with approval the following language: "In such case it is not necessary to establish the existence of a technical joint tenancy to create the right of survivorship; in other words, the incident of survivorship which exists by implication in a joint tenancy is expressly provided for by such a form of deposit. *New Jersey Title Guarantee & Trust Co. v. Archibald*, 91 N. J. Eq. 82." In the instant case, why is it necessary to establish a "technical joint tenancy," the incident of survivorship being expressly provided for in the deed? Both the reasoning and the conclusion in the *Johnson* case are opposed to the reasoning and conclusion of the majority in the instant case. The *Johnson* case is in accord with the reasoning and conclusions in the cases from this and other jurisdictions which this court now refuses to follow. Is not the *Johnson* case, in effect, overruled and such transactions invalidated?

It does not seem necessary to cite authorities from other jurisdictions to sustain this conveyance as one which creates an estate with right of survivorship in the grantees. The opinion in the *Neneman* case was written by a distinguished member of this court, now deceased. The contract which this court there enforced was apparently drafted by an able lawyer and former Chief Justice of this court. It has been repeatedly cited with approval by this court. Many of the profession in this state have accepted it as approving this form of conveyance. That decision should not be disturbed.

The majority opinion further states: "In the absence of legislative enactment, we are not ready to say, * * * that one holding a fee title as an individual in real estate may effectively, and without the intervention of others, convey such real estate to himself as an individual with restrictions upon his right of alienation, or so as to change the nature of his estate." I submit that that is exactly what this court did hold seventeen years ago in the *Neneman* case. For in that case we had a "deed of conveyance" wherein two people holding fee titles, without the interven-

tion of a trustee, conveyed each to the other and created a right of survivorship in the whole, and thereby restricted their rights of alienation and changed the nature of their estate.

This state does not require that property be transferred according to the rituals of the common law. Those methods and forms of the common law have been discarded in Nebraska. Is there an "absence of legislative enactment" that authorizes the creation of such an estate by deed? The majority opinion ignores the simple and complete statutory basis whereby estates in land may be created, aliened, mortgaged or assigned by deed. And likewise the majority ignore the statutory provision (Comp. St. 1929, sec. 76-103) that the term "deed," as used in the statute, "shall be construed to embrace every instrument in writing by which any real estate or interest therein is created, aliened, mortgaged or assigned, or by which the title to any real estate may be affected in law or equity, except last wills and leases for one year or for a less time." Our law does not provide that only estate such as were recognized at common law may be created in Nebraska. Our statute, in broad terms, clearly authorizes the creation of estates and interests in real estate by deed. The statute determines the necessary incidents of the conveyance. No legislative limitation forbids the creation of such an estate by the methods used here. The parties in this case created this estate by deed as the statute authorized them to do.

The majority opinion states that "We hold that the deed in controversy was not capable of creating a joint tenancy as known at common law with right of survivorship * * *. In that view we are supported by the following authorities," citing three cases: *Deslauriers v. Senesac*, 331 Ill. 437, 163 N. E. 327; *Breitenbach v. Schoen*, 183 Wis. 589, 198 N. W. 622; *Pegg v. Pegg*, 165 Mich. 228, 130 N. W. 617. Let us examine the opinion of other courts of these three decisions.

(1) *Deslauriers v. Senesac, supra.*

In *United States v. Jacobs*, 306 U. S. 363, 59 S. Ct. 551, the difference between tenancies by the entirety and joint

tenancies was urged upon the court as a basis for subjecting but one-half of the interest in real property held in joint tenancy to a death duty. The supreme court of the United States held: "The constitutionality of an exercise of the taxing power of Congress is not to be determined by such shadowy and intricate distinctions of common-law property concepts and ancient fictions." The *Deslauriers* case, with its "four unities" of the common law, is cited in the note.

In *Edmonds v. Commissioner of Internal Revenue,* 90 Fed. (2d) 14 (Ninth Circuit, Cal.), the equitable owners of trust property. joined with the trust company in a declaration of trust declaring that it was their intention that said property should be held by them as joint tenants with right of survivorship. The court held:

"In California, to create a joint tenancy there must be" the four unities. The court then said: "Petitioner argues that a person cannot convey title to himself, * * * that if a person conveys property to himself and another as joint tenants, what he has done is to convey an undivided half interest; that since the grantor and grantee acquire their respective interests at different times, and that of the grantor, when acquired, was not the same as that which the grantee acquired, there is neither unity of title, nor unity of time, and therefore no joint tenancy. This technical view is followed in *Breitenbach v. Schoen,* 183 Wis. 589, 198 N. W. 622 (the second case relied upon in the majority opinion) and in *Deslauriers v. Senesac,* 331 Ill. 437, 163 N. E. 327. * * *

"However, the weight of authority is opposed to that view. (Cases cited.) We believe the technical view should give way to the intention of the parties, and hold that a joint tenancy may be created by conveyance from one to himself and another, as joint tenants."

In *Irvine v. Helvering,* 99 Fed. (2d) 265 (Eighth Circuit, Minn.), a husband owned stocks individually; these he transferred to himself and wife as joint tenants. The question was whether a one-half interest in this property went

to his estate or whether it all went to the wife as the surviving joint tenant. The four unities rule was urged upon the court, the contention being that the husband's interest was acquired when the stock was originally purchased, and the wife's interest was acquired by the subsequent transfer, that the tenancy lacked the unity of time and title and was not a joint tenancy but a tenancy in common. Here again *Breitenbach v. Schoen, supra,* and *Deslauriers v. Senesac, supra,* were cited to support the contention that a joint tenancy was not created. The court discussed the Minnesota case of *Peterson v. Lake City Bank & Trust Co.,* 181 Minn. 128, 231 N. W. 794, wherein it was said: "From the viewpoint of a layman the right of survivorship is the principal characteristic of a joint tenancy * * *. That was the goal which they mutually sought;" and *Forney v. Farmers Mutual Fire Ins. Co.,* 181 Minn. 8, 231 N. W. 401, wherein it was said: "We need not decide whether Mr. and Mrs. Forney were technically joint tenants under the language of the deed. It is plain that the element of survivorship was present and that it was the intention of the parties that the survivor was to own the land in fee." The court further cited *Edmonds v. Commissioner of Internal Revenue, supra,* and held that, "While the exact question is, perhaps, still open in Minnesota, we believe that the supreme court of that state would follow the weight of authority, rather than adopt the technical view contended for by the respondent. We are of the opinion that the joint tenancies here in question were valid."

The *Deslauriers v. Senesac* case was cited in *Papke v. Pearson,* 203 Minn. 130, 280 N. W. 183, but it was held that it was not necessary to decide the question as to whether a party could create a joint tenancy by direct conveyance.

The question was discussed in *Eisenhardt v. Lowell,* 105 Colo. 417, 98 Pac. (2d) 1001, and citation was made to the note in 62 A. L. R. 514, following the report of the *Deslauriers* case on page 511. The contention was made that a joint tenancy cannot be created by conveyance of the

property from the owner to himself and another. The court said: "Failing to perceive any particular necessity for circuitous conveyance through a dummy from the owner to the intended joint tenants, we are inclined to favor the latter view (that a joint estate may be thus created where the intent to create is clear), although, since it is unnecessary to a determination of the question here presented we do not expressly so hold."

Likewise the annotation in 62 A. L. R. 514, was referred to in *Johnson v. Landefeld,* 138 Fla. 511, 189 So. 666, wherein the court, evenly divided, held that "A man * * * may by appropriate deed convey to his wife and to himself as tenants by entireties so that such property will not pass to a son under a subsequent will of the grantor husband."

I have herein reviewed all of the decisions that, according to the Shepard Northeastern Citator, have in any way made reference to the *Deslauriers* case. It is obvious that it has not received the approval of the appellate courts that have had occasion to review it.

(2)  *Breitenbach v. Schoen, supra.*

This case states that a tenancy in common and not a joint tenancy in personalty was created where the owner of stock had assigned directly to herself and son "or survivor." However, the court further held that the attempted gift was never completed by delivery and that the son was not the owner of the stock. The decision turned not on the question of the nature of the estate created, but upon the question of delivery, and the determination of the first question was not necessary to a decision of the second. It would appear that the determination, in the opinion, of the nature of the estate created was dictum.

The *Breitenbach* case was cited favorably in the *Deslauriers* case. It was next cited in *Fries v. Kracklauer,* 198 Wis. 547, 224 N. W. 717. The question there presented was whether or not a deed had created a joint tenancy or a tenancy in common. The court cited the *Breitenbach* case as the sole authority for this proposition: "The legislative

public policy is declared by sec. 230.44, Stats., to the effect that grants and devises of land made to two or more, unless within certain exceptions not material here, shall be construed to create estates in common and not in joint tenancy, unless expressly declared to be the latter. To the same effect are the judicial decisions." The *Breitenbach* case was again cited on the question of a completed gift in *Marshall & Ilsley Bank v. Voigt*, 214 Wis. 27, 252 N. W. 355. It was again considered by the supreme court of Wisconsin in *Estate of Staver*, 218 Wis. 114, 260 N. W. 655. In that case certificates of deposit had been issued to "Joseph Staver or Frank J. Staver" and kept in the possession of Joseph who by his will devised them to Frank J. The question was whether they passed to Frank J. under the will, and subject to debts, or to him as survivor free from debts. The court held that delivery of the certificates to Joseph was sufficient, and that a further delivery to Frank J. was unnecessary to entitle him thereto by right of survivorship. The court referred to the *Breitenbach* case and said: "The right of the son to take by survivorship was denied by this court on the ground that there had been no delivery to him of the certificates. This case is clearly inconsistent with the rule announced in the instant case and will be considered overruled, as to that part of the decision in conflict herewith."

The *Breitenbach* case is again cited in *Estate of Skilling*, 218 Wis. 574, 260 N. W. 660. There a savings account was carried in the name of Edward Skilling or John M. Skilling. Edward Skilling created the account. The question was whether it belonged to Edward's estate or to John M. as survivor. The court said: "*Breitenbach v. Schoen, supra,* is overruled." The "four unities" rule does not seem to have been observed by the Wisconsin court in the latter decisions.

Other than the two references noted in discussing the *Deslauriers* case, Shepard's Northwestern Citator makes no further reference to the case.

(3) *Pegg v. Pegg, supra.*

In that case David Pegg, the husband, by warranty deed in the usual form, conveyed to Mary Pegg, the wife, an undivided one-half interest in certain real estate. Between the granting and habendum clauses was inserted the following: "The object and purpose of this deed is to convey to said second party such an interest in said land that the parties hereto will have an estate in entirety, and that the same shall survive and vest in the survivor as a full and complete estate." It will be noted: First, that the deed was in form a general warranty deed; second, that the husband did not convey to himself and another, but only to another person; third, that the grantor conveyed and retained an undivided one-half interest. The widow contended that the retained one-half upon his death did not descend to his heirs, because she and her husband owned the premises as tenants by the entirety, made so under the deed, and that she is the owner of the whole. The court held that an estate by entirety was not created.

The *Pegg* case was cited in *Wright v. Knapp,* 183 Mich. 656, 150 N. W. 315. In that case, the husband conveyed to himself and wife "jointly, the survivor to have full ownership of the same." It was held that an attempt was made to create an estate in entirety which failed, and that the deed did not create an estate in entirety, nor in joint tenancy, but did create an estate in common. The *Pegg* case was followed in *Michigan State Bank v. Kern,* 189 Mich. 467, 155 N. W. 502, with the statement that "It has recently been held by this court that such a deed (from husband to self and wife) creates a tenancy in common, and not one by the entirety." It was again cited in *Weaver v. Michello,* 193 Mich. 572, 160 N. W. 612, on the question as to whether the formalities necessary to create a tenancy by the entireties had been observed. It was again followed in *Union Guardian Trust Co. v. Vogt,* 263 Mich. 330, 248 N. W. 639, on the question as to how an estate by entireties may be created.

However, the *Pegg* case has been considered by other courts. In *Lang v. Wilmer,* 131 Md. 215, 101 Atl. 706,

where the case appears to have been decided on a question of limitations, the court discussed, among others, the *Pegg* case and said: "It is apparent that the controlling feature of *Pegg v. Pegg* was that the grant to the wife was only of an undivided one-half interest in the property, which made the wife a tenant in common, and which the court held could not be enlarged by the subsequent clause of the deed. * * * In the case at bar the conveyance was not in terms of an undivided one-half interest in the property, but a grant of the entire estate to husband and wife * * * and there is no conflict between the granting and habendum clauses of the deed."

The *Pegg* case was referred to in *Weinbeck v. Dahms,* 134 Md. 464, 107 Atl. 12, as to the general rule of interpretation of instruments. It is again cited generally in *Bennett v. Hutchens,* 133 Tenn. 65, 179 S. W. 629, as to the creation of an estate in entireties. It is cited in *Breitenbach v. Schoen, supra.*

In *Brown v. Jackson,* 35 N. M. 604, 4 Pac. (2d) 1081, the court pointed out that the *Pegg* case was "open to the criticism that the court permitted a technical objection to override the grantor's express intention," and specifically refused to follow the *Pegg* case, where community property was conveyed by the husband and wife to the wife and daughter, and held, following the New York cases, that the four unities were observed when the new estate was created by the deed, and specifically gave effect to the intent of the parties.

The final reference to the *Pegg* case is in *Hicks v. Sprankle,* 149 Tenn. 310, 257 S. W. 1044, on the proposition that a "limitation expressed in the habendum cannot destroy the fee conveyed by the granting clause."

It is noted that the *Pegg* case deals with the creation of an estate by the entireties. I shall not attempt to point out the distinctions and similarities of estates in the entirety and in joint tenancy. I call attention, however, to a case from the same court, *Bassett v. Budlong,* 77 Mich. 338, 43 N. W. 984, wherein a husband conveyed land to his wife

by quitclaim, with the reservation following the habendum clause that she should not, during his lifetime, convey the land without his consent, and that in case of her death prior to his the estate should "revert back" to him. The court said: "Every deed or contract in writing is supposed to express the intention of the parties executing it, and when the object or purpose of such deed or contract is called in question in a court of justice the first inquiry is, what is the intention of the parties, as expressed in the written instrument? * * * It is the duty of the court to so construe the instrument as to carry out the intent of the parties making it, if no legal obstacle lies in the way. * * * When we consider the intimate relation of the parties to the instrument,—that of husband and wife,—the effect of the arrangement entered into was that the title to the real estate should, in the event of the death of either, go to the survivor. Doubtless a simpler way to accomplish the object would have been for them to have united in a deed to a third party, and for him to have conveyed to them jointly, and then, under the statute, the survivor would have succeeded to the whole title and estate." It was held that the effect of the instrument was to leave the title to the survivor.

So far as the effect of the conveyance is concerned, is that not what happened in the instant case, although the form of the conveyance was not the same?

In the *Pegg* case, the *Bassett* case is cited for a "suggestion" following a discussion of the four unities.

The *Bassett* case is repeatedly cited on the proposition that the intent of the parties is the fundamental inquiry, and upon the effect of a habendum clause which limits the granting clause, and in support of the proposition that technical rules of construction are not favored.

I submit that these three cases, one which has not been favorably received by other courts, one which has been specifically overruled by the court that wrote it, and one clearly distinguishable from the case at bar, create an insecure foundation upon which to rest a decision denying

effect to the clearly expressed intent of the parties to a conveyance, and upon which to rest a rule affecting the title to property of the importance of the one under consideration.

It may be of value to here note the comment of an English writer upon the four unities rule. Henry W. Challis, "of the Inner Temple, Barrister-at-Law," in his Real Property, *295, says: "The identity of the interest and title of joint tenants is commonly analyzed into the 'fourfold unity' of interest, title, time, and possession. 2 Bl. Com. 180-184. This analysis has perhaps attracted attention rather by reason of its captivating appearance of symmetry and exactness, than by reason of its practical utility. It means only, that each joint tenant stands, in all respects, in exactly the same position as each of the others; and that anything which creates a distinction either severs the joint tenancy or prevents it from arising. Blackstone seems not to have adverted to the fact that the 'unity of time' is not, under the learning of uses and devises, an indispensable requisite."

The majority opinion discusses at length the intent statute, section 76-109, Comp. St. 1929. As to that discussion, I make three suggestions: First, that the discussion, also, is dictum; second, that the statute does not require that instruments be construed so as to restrict the grant to conveyances such as existed at the common law, but to the intent of the parties, "so far as such intent is consistent with the rules of law."

What are the "rules of law" referred to in the intent statute upon which the majority opinion relies for its authority to ignore the clearly declared intent of the parties? The phrase is easily defined. In its broad aspects it means the law of the land. It includes the federal and state Constitutions, applicable federal statutes, the Nebraska statutes, and the decisions of appellate courts construing such Constitutions and statutes and interpreting and applying the law. The clause should not be construed to limit its scope to the rules of the common law.

The whole of the common law is not now and never

has been in force in this state. By statute, only "so much of the common law of England as is applicable and not inconsistent with the Constitution of the United States, with the organic law of this state, or with any law passed or to be passed by the legislature of this state, is adopted and declared to be law within the state of Nebraska." Comp. St. 1929, sec. 49-101. Is there a rule of law in this state inherited from the common law that is so static that it prevents this instrument from being enforced so as to carry out the obvious and admitted intention of the parties? The legislature did not define the rules of law to which it referred in the intent statute. It left that matter to the sound judgment of the court. The law grows. Growth requires an orderly change. Of necessity, the law must be adjusted and changed to meet changed conditions.

The legislature has defined the method of creating and transferring estates in Nebraska. It has not shackled our people nor our courts with the common law of England, but has left that law to be made "applicable" to Nebraska and to permit the law of this state to develop with our needs and necessities. This court has, in the *Neneman* case, declared the rule of law as to the estate that may be created by deed under circumstances such as exist here, has refused to apply the "four unities" rule to such a conveyance, has permitted a party to convey real estate directly to himself and another and by that means to create an estate with right of survivorship. The estate intended to be created, as declared in this instrument, is consistent with the rules of law as announced in the *Neneman* case. Should the clearly expressed intent of the parties be thwarted after they have followed the "rules of law" as announced by this court? I do not think so. We should not now turn backward and recede from that position.

Public policy does not require that the intent of the parties to this conveyance be thwarted and the deed be construed to create an estate other than that intended by the parties. In fact, joint tenancy estates with right of survivorship have been approved by this court. See *Sanderson*

*v. Everson,* 93 Neb. 606, 141 N. W. 1025. The majority opinion follows that approval.

The majority opinion states: "Courts should not create new kinds of estates, heretofore unknown." Certainly it is not the contention that an estate in joint tenancy with right of survivorship is a new kind of estate heretofore unknown. Neither can it be contended that the court is being asked to create an estate known or unknown. This court is being asked to hold valid an estate created by deed and according to the clearly declared intent of the parties.

Third, the majority opinion states that our "intent" statute was copied from the New York Code of 1828. It continues in practically the same language in the New York Code today. Book 49, McKinney's Consolidated Laws of New York, 458, sec. 240. In view of the fact that our intent statute came from New York, we might with profit consider the holdings of the courts of that state as to this problem. I venture, therefore, to discuss some of the New York cases of recent date, the "logic" of which the majority opinion holds is "untenable."

*Colson v. Baker,* 42 Misc. 407, 87 N. Y. Supp. 238. "The question to be determined on this motion is whether a person seized in fee of an estate can, by a direct grant, deed the property to another and himself in joint tenancy, instead of tenancy in common, without the intervention of a third party." It was claimed "that in this day of directness resort must be had to the indirect and useless method of conveyance through a third party for an owner in fee to carve out a joint tenancy for himself and another in his estate." The "four unities" were relied upon. The court said: "In all references to the 'four unities'. requisite to create a joint tenancy, I find nothing that prevents their existence or creation by the act of the grantor for himself and another as well as by his act for two other persons." The court cited 1 Thomas, Coke on Littleton, 732: "If a man make a feoffment in fee to the use of himself and of such wife as he should afterwards marry for the term of their lives and after he taketh a wife, they are

joint tenants and yet they come to their estates at several times," and points out that neither Coke nor Blackstone considered it "an exception to the general rule." "It being conceded that the intent to create a joint tenancy * * * could have been accomplished by a conveyance through a dummy, a third party, I see no reason for insisting upon such circuitousness." The survivor was held entitled to the entire estate.

*Saxon v. Saxon*, 46 Misc. 202, 93 N. Y. Supp. 191. The plaintiff owned the land and made deed to himself and wife. In the clause, descriptive of the parties, the language was "for their joint lives, and upon the death of either the survivor to become absolute owner." It was contended an estate by entireties was created. The court construing the quoted language as though it were in the habendum said: "They do not create an estate by the entireties, but only a joint tenancy; and the plaintiff was able to convey an estate in joint tenancy, or any other estate, to his wife."

*Coon v. Campbell*, 138 Misc. 567, 240 N. Y. Supp. 772, a husband deeded to himself and wife "as tenants by the entirety." The referee in writing the opinion reviewed a number of New York decisions and said: "It seems to me that the drift of present legislation is towards the elimination of the archaic. That the present day decisions of the courts are in accord with this spirit, to use and interpret language in accordance with the understanding of the average man with the view to clarify rather than to obscure. * * * The instant case is typical of the application of archaic law to present time conditions. Here was the husband * * * confronted with the certainty of survivorship of either himself or his wife and desirous of bestowing the estate upon either his wife or retaining it himself, and directly and simply he expressed such a purpose, and now the widow * * * waits for the courts to slowly unroll the record * * * and to determine * * * whether the language shall be construed as though uttered in the twentieth century or the eighteenth."

*Matter of Klatzl*, 216 N. Y. 83, 110 N. E. 181, the syllabus

approved by the court is: "The creation of a tenancy by the entirety is permitted by law and a husband may by conveyance to himself and his wife create such a tenancy, thereby reserving to himself the same rights he would have had under a deed from a third person." This holding was reiterated in *Boehringer v. Schmid,* 254 N. Y. 355, 173 N. E. 220.

This court has said: "A technicality should be temperately resorted to at all times, but not to defeat plain justice. Like every known rule of law, it may be liberally applied to oppose, not aid, a manifest wrong." *Northwest Ready Roofing Co. v. Antes,* 117 Neb. 121, 219 N. W. 848.

Before adopting this technical requirement of the common law, as the applicable law in this state, consideration should be given to its effect upon the business transactions of the state as well as its effect upon titles to real estate. This court has held that personal property may be held in joint tenancy. *In re Estate of Johnson, supra.* (The overruled case relied upon by the majority deals with personal property.) It must be recognized that financial institutions have quite generally issued securities to people as joint tenants with right of survivorship. The right and practice to so hold property by declaration of the parties is clearly recognized in *Smith v. Douglas County* (a Nebraska case) 254 Fed. 244. Under the opinion of the majority, if people in this state desire to change their personal property holdings from a separate estate to one of joint tenancy, is it necessary that they first convey it to a trustee and have it reconveyed? Must records of the conveyance through a trustee be made and kept in order that proof of compliance with this technical requirement may be available? This opinion would seem to require that that be done.

What will be the effect of this opinion upon the title to all the real property in Nebraska which has been conveyed by the owner direct to himself and another as joint tenants with right of survivorship? Clearly, the title to such lands is in question. If the court adheres to this technical rule of the common law, then it is certain that no examiner will

hold that a joint tenancy exists, but what lawyer can tell clients what kind of a title they have? Clearly, all such titles will be in confusion, until this court, in some future litigation, undertakes to determine what title actually is conveyed by such an instrument.

All of this uncertainty and confusion may be avoided if this court would follow its prior decisions and the clearly defined rules of the majority of the modern decisions of the courts of the country.

ROSE, J., concurs in this dissent.

CARTER, J., concurring.

The doctrine of estates, together with the characteristics and manner of creation of estates, has come down to us from the common law of England. A joint tenancy is an estate with many distinguishing features which originated in the common law. Naturally, we have adopted the common law as to joint tenancies by virtue of the act of our legislature in adopting all of the common law that is applicable. We cannot escape this conclusion by merely saying that it is within the sound judgment of this court to say what is and what is not applicable. The invocation of such a rule would introduce speculation and uncertainty into the field of titles and estates, a result to be unqualifiedly condemned. Property law has had a separate development, and of all the law, it has been the slowest to change and the most stubborn in resisting innovations. The reason for this is so patent as not to require exposition here. I agree that the law should not be made static and that opportunities should be available to meet changing conditions. But innovations should not be indulged in to create confusion and uncertainty, the best evidence of which is contained in the very dissent which charges the majority opinion with so doing.

In a joint tenancy the tenants thereof must have one and the same interest, arising by the same conveyance, commencing at the same time, and held by one and the same undivided possession. A common-law joint tenancy, upon the death of one joint tenant, vests the whole title in the

survivor free from the debts of the deceased joint tenant. In such an estate the four unities of time, title, interest and possession must be maintained throughout its tenure because an act which destroys one or more of the unities results in a severance incompatible with the existence of a joint tenancy. An estate in joint tenancy as known in the common law is lawful in this state, and there being no legislation restricting its nature, characteristics and attributes, the term "joint tenancy," when used as descriptive of an estate conveyed, means a joint tenancy as known in the common law.

An estate in the nature of a joint tenancy can be created by contract. The right of survivorship can be supplied by the agreement of the parties. But it is not, strictly speaking, a joint tenancy and it does not have all the attributes of such an estate. There can be a sale, gift or pledge of the interest of one cotenant in such an estate created by specific contract without the destruction of the estate. The interests of the joint owners in such an estate are subject to debts. Such is not the case in a common-law joint tenancy. The case of *Neneman v. Rickley*, 110 Neb. 446, 194 N. W. 447, the primary basis of the dissenting opinion, is such an estate created by contract. The contract in that case did not create a joint tenancy and the opinion so states. The interests of the parties were subject to the debts of the deceased joint tenant which is also shown by the opinion. A close reading of that decision discloses that it was not a joint tenancy, but did create a tenancy in common with some but not all of the attributes of a joint tenancy.

If we are to say that a joint tenancy with all its peculiar characteristics and attributes can exist without the unities of time and title, on what basis can we say that any of the common-law unities are essential? If the common-law definition of the term "joint tenancy" is not the basis of determining its nature and manner of its creation, then how are they to be determined? Certainly, the components of such an important estate cannot be left to the decisions of the courts on the facts of each particular case. Such a

rule would disrupt real estate transactions and impair the merchantability of every estate, where tenancies in common or joint tenancies might be involved. In an estate created by contract we can interpret the language used and gather the intent of the testator or grantor from the instrument creating it. But when the words "joint tenancy" alone are used as descriptive of the estate conveyed, we must look to the common law, the place of its creation, for the answer. And if the common-law definition be archaic and obsolete, our legislature has the power to change it, in which event we could look to the language of the statute in determining the nature and characteristics of the statutory joint tenancy thus created. By this method definiteness and certainty would be maintained and the confusion and want of uniformity that would otherwise follow would be avoided.

Essential requirements were lacking in the case before us to create a joint tenancy and the situation cannot be remedied by a declaration in the deed that it is intended to convey a joint tenancy. A noted text-writer states the rule applicable in the case before us as follows: "A conveyance by a husband and wife of property owned by the wife to themselves cannot create an estate in joint tenancy, but is effective to convey the husband an undivided half interest in the property, even though the deed declares that it is intended to convey a joint tenancy, and not a tenancy in common." 2 Tiffany, Real Property (3d ed.) sec. 421. While it was not necessary to a decision to determine the nature of the estate conveyed by the deed in the case before us, the writer has no hesitancy in answering the question posed by the dissent by stating that the deed before us, except for the undue influence found to exist, conveyed a half interest in the land to the wife.

It is essential that titles and estates in land be definite and certain. It is not a field in which the court should undertake to establish that it is liberal and modernistic in keeping pace with changing conditions. The creation of hybrid estates unknown to the common law is to be deplored. It can only bring about uncertainty, confusion and

want of stability in estates and their attributes. Carried to an absurd conclusion, there would eventually be as many different kinds of estates as there are tracts of land. The plain duty of this court is in the opposite direction. Many states have made changes by legislative action and this is entirely proper. Other states have made such changes by judicial fiat which have resulted in all the varied and conflicting decisions cited in the dissent. I submit that it is the obligation of this court to adhere to the landmarks of the common law on this subject until we are directed by competent authority to deviate therefrom.